# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

### PAUL M. JONES v. W. T. HALL.

June 9, 1941.

Record No. 2357.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

*George L. Doughty* and *B. T. Gunter, Jr.*, for the plaintiff in error.

*H. Ames Drummond*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

On January 15, 1934, W. T. Hall obtained two judgments, totaling $2,427, against Jerome Marshall. These judgments were duly docketed in the judgment lien book in the clerk's office of the Circuit Court of Accomack county. On November 5, 1936, Paul M. Jones purchased certain standing timber "from Jerome Marshall, who had title to and was in possession of a certain tract or parcel of timber, * * * for the sum of $1,350.00, and paid said sum * * * to the said Jerome Marshall." While the purchaser was given two years in which to cut and remove the timber, he began operations as soon as he obtained the deed—November 6, 1936,—and finished cutting and removing the timber from the land on the 22nd day of March, 1937. In 1938, certain prior lien creditors of Jerome Marshall brought a creditors' suit against him, in which all the real estate of the judgment debtor was sold, including the land from which the timber had been removed, and the proceeds of the sale were distributed among the creditors in the order of their priority. All liens prior to the judgment liens of W. T. Hall were paid in full, and a final decree dismissing the cause was entered at the February term, 1940. Jerome Marshall is insolvent.

W. T. Hall, the judgment creditor, instituted this proceeding by filing a petition for attachment against the property of Paul M. Jones, a non-resident. In the petition it is alleged that it was the duty of the purchaser to see that the proceeds from the sale of the timber were applied to the payment of lien debts of the judgment

debtor, and that the failure to perform this duty rendered the purchaser personally liable to the judgment lien creditor for the amount of the purchase price. The trial judge, without a jury, entered judgment for the full amount of the purchase price paid for the timber less $344, which was applied on the payment of accumulated taxes on the land. From that judgment Paul M. Jones obtained this writ of error.

The dominant question presented is whether a judgment lien creditor, after timber has been cut and removed, is entitled to recover from the vendee the amount of the proceeds of the sale of the timber paid the judgment lien debtor in possession, where it appears that the land had been sold by other creditors and did not bring a sufficient amount to pay such judgment lien creditor.

The question is one of first impression in this jurisdiction. No case is cited in the briefs, nor have we found one in our research permitting recovery under such circumstances; but see *Hamilton* v. *Phillips*, 120 Ala. 177, 24 So. 587, 74 Am. St. Rep. 29; *Clark* v. *Johnson*, 7 Ala. App. 507, 61 So. 34, 36, and *Connecticut General Life Ins. Co.* v. *Smith*, 226 Ala. 142, 145 So. 651, 654.

At common law lands of the debtor could not be seized to satisfy a judgment unless the judgment was in favor of the king. By statute, West. II, 13 Edw. 1, ch. 18, it was provided that, " 'when a debt should be recovered, or recognizance should be acknowledged in the king's court; or when damages should be adjudged, it should be *in the election* of the plaintiff to sue out a writ commanding the sheriff to make the debt or damages out of the *goods and chattels* of the debtor, or to deliver to the creditor all the chattels of the debtor (except *oxen and beasts of the plough*), and a *moiety of his land,* until the debt should be levied by a reasonable *price or extent;* * * * .' When a creditor chose to avail himself of this latter alternative, of subjecting the debtor's lands, there

was an entry upon the roll, *Quod elegit sibi executionem fieri de omnibus catallis et medietate terrae* (that he elected to have execution against the debtor's chattels, and a moiety of his land) ; and thence the execution itself came to be denominated an *elegit,* and the estate (which) devolved, by means of it, upon the creditor, *'until the debt should be levied* by a reasonable price or extent,' was known as an *estate by elegit.* (2 Bl. Com. 161; Bac. Abr. Execution, (C.) 2.)

''The words of the statute are that the creditor shall have the property delivered to him *per rationabile pretium vel extentam,* which implies that there is to be a *valuation* made. This valuation, it has always been held, that the sheriff alone cannot make. It must be made *by a jury* which the sheriff impanels for the purpose, whose charge is to *appraise* the debtor's goods and chattels (except beasts of the plough), which thereupon the sheriff is to deliver to the creditor *as his own;* and if thereby the debt is satisfied the lands are not to be *extended;* but if the debt is not thereby extinguished, the moiety of the debtor's lands is to be delivered to the creditor at an annual sum, to be assessed by the jury, to be held by him *until the residue of the debt shall be levied.* (Bac. Abr. Execution, (C.) 2.).'' Minor Inst., 4 ed., Vol. II, p. 302-3.

''It was by the judicial construction given to this writ, that the judgment was said to be a *lien* on the land. The *lien* resulted from the mandate of the writ to *deliver* to the creditor * * * a moiety of all the lands and tenements of the debtor, whereof he was *seized at the date of the judgment, or at any time afterwards.* The *lien* was an incident of the writ and depended for its existence and continuance upon the capacity to sue out the writ * * * .'' Judge Burks, the elder, in *Borst* v. *Nalle,* 28 Gratt. (69 Va.) 423, 429.

Professor Minor states several changes which were made by later statutes in the writ of *elegit:* ''1st, that *personal chattels* were wholly excluded from the opera-

tion of the writ; and 2nd, that it applied to *the debtor's lands,* leasehold as well as freehold. * * *," and that "a judgment binds *all the real estate* of or to which the debtor was possessed or entitled *at or after* its date, notwithstanding the debtor may have sold it to purchasers *for value* and *without notice* of the judgment." Minor Inst., 4 ed., Vol. II, p. 303.

This writ of *elegit* worked a hardship upon purchasers for value, so, in 1843 (later codified by the revisors of the Code of 1849), it was provided that no judgment should be a lien on real estate as against a purchaser thereof for valuable consideration without notice unless it be docketed. See Code of 1849, ch. 186, sec. 8. Under the writ of *elegit* the sheriff was commanded to cause all the real estate of, or to which, the said judgment debtor was possessed or entitled, to be delivered, by reasonable extent, to the judgment creditor "for him and his assigns to hold the same, until the amount of the said judgment be levied thereof." Code of 1849, p. 712. But the sheriff had to make an inquisition of the value of the lands, for which purpose a jury was sworn, who ascertained the amount of real estate owned by the judgment debtor and its annual value. At such valuation the land was delivered to the judgment creditor for his claim to be satisfied.

This writ gave to the judgment creditor the right to seize the land of his judgment debtor in satisfaction of his judgment debt. This right was preserved by statute and made independent of the capacity to sue out the *elegit.* The statute now provides: "Every judgment for money rendered * * * shall be a lien on all the real estate of or to which the defendant in such judgment is or becomes possessed or entitled, at or after the date of such judgment." Code of 1849, p. 709, sec. 6; Code of 1936, sec. 6470.

Thus, as originally created, the judgment lien was a right to subject a part of the land owned or subsequently acquired by the judgment debtor to the satis-

faction of the debt. The statute extended this right to all real estate which the judgment debtor owned or subsequently acquired, except that conveyed to a purchaser for value and without notice. During this metamorphosis the nature of the judgment lien was not changed. It was originally, and is now a right given the judgment lien creditor to have his claim satisfied by the seizure of the land of his judgment debtor. It is not a proprietary right in the lands of the judgment debtor, but merely a right to levy on any such lands for the purpose of satisfying the judgment to the exclusion or destruction of any right which may have accrued to others since the attachment of the lien. Tiffany on Real Property, Vol. II, pp. 1304-5.

■ ■ Mr. Justice Story, in *Conard* v. *Atlantic Ins. Co.*, 1 Pet. (26 U. S.) 386, 442, 443, 7 L. Ed. 189, said:

"It [judgment lien] only confers a right to levy on the same, to the exclusion of other adverse interests, subsequent to the judgment; and when the levy is actually made on the same, the title of the creditor, for this purpose, relates back to the time of his judgment, so as to cut out intermediate incumbrances. But subject to this, the debtor has full power to sell or otherwise dispose of the land. His title to it is not divested or transferred by the judgment, to the judgment-creditor. * * * . In short, a judgment-creditor has no *jus in re,* but a mere power to make its general lien effectual, by following up the steps of the law, and consummating his judgment by an execution and levy on the land. If the debtor should sell the estate, he has no right to follow the proceeds of the sale into the hands of vendor or vendee, or to claim the purchase money in the hands of the latter. It is not like the case where the goods of a person have been tortiously taken and sold, and he can trace the proceeds, and, waiving the tort, chooses to claim the latter. The only remedy of the judgment-creditor is against the thing itself, by making that a specific title, which was before a general lien." See

Freeman on Judgments, 5 ed., vol. 2, p. 1925; 15 R. C. L. 797; and 31 Am. Jur. 18.

In *Musa* v. *Segelke & Kohlhaus Co.*, 224 Wis. 432, 272 N. W. 657, 111 A. L. R. 168, 169, this is said: "Such a lien, under a judgment 'does not constitute or create an estate, interest, or right of property in the lands which may be bound for its satisfaction; it gives merely a right to levy on such lands to the exclusion of adverse interests subsequent to the judgment.' 34 C. J., p. 569, sec. 872 C. 'In theory,' as is stated in 15 R. C. L., p. 797, 'a judgment is but a security for a debt, and the lien of a judgment on lands does not constitute, in law, *per se,* a property or right in the land itself, and a plaintiff who obtains a judgment does not thereby acquire any interest or estate in the property.' Those propositions are well established. *Lee* v. *Keech,* 151 Md. 34, 133 A. 835, 46 A. L. R. 1488; *Roy* v. *Abraham,* 207 Ala. 400, 92 So. 792, 25 A. L. R. 101; *Eaton* v. *Doub,* 190 N. C. 14, 128 S. E. 494, 40 A. L. R. 273; *Oklahoma State Bank* v. *Burnett,* 65 Okl. 74, 162 P. 1124, 4 A. L. R. 430; 2 Freeman, Judgments, sec. 915; 1 Black, Judgments, sec. 400."

■ "Timber when severed from the debtor's land is not subject to the general lien of a judgment, since this confers no right on the creditor before levy to sue for waste. The same is true of rents and profits from real estate." 2 Freeman on Judg., p. 1977.

In *Lee* v. *Keech,* 151 Md. 34, 133 A. 835, 46 A. L. R. 1488, the Maryland court said: " 'It [a judgment lien] gives the judgment creditor no right to the land nor any estate in it.' * * * . 'Such lien secures the creditor neither *jus in rem* nor *jus ad rem.*' * * * . So it has been held that he could not sue for such waste as might injure his security, nor recover for crops produced upon it, or timber cut from it, before sale upon execution. * * * . And what the judgment creditor has is rather in the nature of a remedy than of an estate, * * * ."

■ In *Independent School Dist. of West Point* v.

*Werner,* 43 Iowa 643, it was held that: "A judgment debtor * * * has a right to cut fire wood and timber upon his land previous to a levy, and it follows that such wood and timber cut, but not removed, become his personal property, and do not pass by a levy upon, and sale of, the land."

The pronouncement of the judgment creates the lien and brings into existence the right to take the next step to enforce it against the land of the judgment debtor. Formerly this was done by suing out a writ of *elegit;* now by instituting a suit in equity. Until the land is actually seized, the possession of the owner is not disturbed. The debtor has full power to use, to sell or to otherwise dispose of it. *Rodgers* v. *Bonner,* 45 N. Y. 379.

The creditor, by virtue of the judgment lien, is not entitled, as a matter of right, to the proceeds of sale, if the land or timber is sold. His remedy is against the thing itself. The debt evidenced by a judgment, unlike many obligations described in a mortgage or deed of trust, is past due. There is nothing to prevent its immediate enforcement. If, in the suit to enforce, it is shown that the owner of the land or his assignee, in possession, is doing any act that tends to lessen its value and to jeopardize the full satisfaction of the judgment, such act may be restrained until the land is, in due course, offered for sale.

Although Hall lived "in about 500 yards" of the standing timber, he took no steps to prevent its removal; but, approximately three years after the timber had been cut and removed, he instituted this action to recover the proceeds of such sale from the vendee. His right to recover is stated in the pleading thus: "That said defendant purchased from Jerome Marshall a certain tract or parcel of timber at and for the sum of $1,350.00 and paid said sum to the said Jerome Marshall, and at the time of said purchase said plaintiff had a judgment against the said Jerome Marshall, and that said plain-

tiff did not waive his said lien, or consent to said sale, and that said sum of $1,350.00 should have been paid to the lien creditors of the said Jerome Marshall; that prior lien creditors of said Jerome Marshall have now been paid, leaving the greater part of plaintiff's lien unpaid, and that all of the assets of said Jerome Marshall have been liquidated, and there remains no property out of which said plaintiff's lien can be satisfied, and that the plaintiff is entitled to, or ought to recover of said principal defendant, at the least the said sum of Thirteen Hundred Fifty and no/100 Dollars, with interest thereon from the 5th day of November, 1936, until paid."

The parties agreed "that there was no fraud or collusion by the said Jerome Marshall and the said Paul M. Jones to impair the security of the said lien creditor or any other creditor in the sale and purchase of this timber." The financial status of the judgment debtor at the time the sale was consummated is not alleged or proven. The judgment lien creditor's claim in this case is based solely on an alleged right in or to the proceeds of the sale of standing timber removed from the debtor's premises after the judgment was recorded. No such legal right accrues under a judgment lien.

We have confined the discussion in this opinion strictly to the issues presented. While the rights of a mortgagee or a beneficiary in a deed of trust, whereby specific real estate is conveyed as security for the payment of obligations due or to become due, are somewhat analogous to the rights of a judgment lien creditor, they are not identical. Such rights are not involved in this litigation. Hence, we express no opinion on the divergent views of such rights as prevail in other jurisdictions.

The judgment of the trial court is reversed and final judgment here entered for plaintiff in error.

*Reversed and final judgment.*