## Richmond

JULIA PADIS ORPHANOUDAKIS V. JOHN ORPHANOUDAKIS AND SOPHIE CANIAS.

SOPHIE CANIAS V. JULIA PADIS ORPHANOUDAKIS.

June 14, 1957.

Record Nos. 4667, 4668.

Present, All the Justices.

The opinion states the case.

*William C. Worthington,* for appellant, Julia Padis Orphanoudakis.

. *H. M. Woodward (P. A. Agelasto, Jr.; Woodward & Ward,* on brief), for appellees, John Orphanoudakis and Sophie Canias.

*H. M. Woodward (P. A. Agelasto, Jr.; Woodward & Ward,* on brief), for appellant, Sophie Canias.

. *William C. Worthington (Worthington & White,* on brief), for appellee, Julia Padis Orphanoudakis.

EGGLESTON, J., delivered the opinion of the court.

These are separate appeals, heard together, attacking the validity of a decree entered in a suit filed by Julia Padis Orphanoudakis against John Orphanoudakis and others, seeking to subject certain lands owned by certain of the defendants to the lien of a judgment which the plaintiff had obtained and docketed against John Orphanoudakis. In her bill the plaintiff alleged that in May, 1948, in a divorce proceeding, she had obtained a decree against John Orphanoudakis adjudicating that he should pay to her certain monthly sums for alimony and for the support and maintenance of their child, and that the judgment had been properly docketed in the Clerk's Office of the Corporation Court of the city of Norfolk. The bill further alleged that the judgment had not been paid and became a lien on lots numbers 26 and 27 on the map of Haritan Gardens, in the city of Norfolk, owned by John Orphanoudakis; that after the judgment had become a lien on the property, John Orphanoudakis, using the name John N. Orphan, had conveyed the property to his sister, Sophie Canias, who in turn had conveyed lot number 26 to Arthur Cooper and Eleanor Cooper.

Sophie Canias, Arthur Cooper and Eleanor Cooper, as well as John Orphanoudakis, were made parties defendant to the bill and the prayer was that both lots be subjected to the payment of the lien of the judgment and that the plaintiff might have "such other and further relief" as the nature of her case might require.

The defendant, John Orphanoudakis, alleged to be a nonresident, was proceeded against by an order of publication. He did not answer or enter any appearance in the cause.

The defendant, Sophie Canias, filed an answer denying that the judgment was a lien on the two lots which had been conveyed to her, because, she said, she was a bona fide purchaser for value thereof without notice of the judgment. The Coopers filed an answer denying on the same ground that the judgment was a lien on lot number 26 which they had purchased from Sophie Canias.

The evidence on behalf of the several parties was taken by depositions. The lower court decreed that the Coopers were innocent purchasers for value of lot number 26; that they had no knowledge of the judgment or of the fact that John N. Orphan, predecessor in title to Sophie Canias, was also known as John Orphanoudakis; and that, therefore, they, the Coopers, took lot number 26 free of the lien of the judgment. That part of the decree has become final and is not attacked on this appeal.

The lower court further held that the defendant, Sophie Canias, was charged with "constructive notice" of the judgment and that hence lot number 27, still owned by her, was and is subject to the lien. From that part of the decree Sophie Canias has appealed. (Record No. 4668.)

Upon the presentation of the decree for entry counsel for the plaintiff, Julia Padis Orphanoudakis, moved the lower court to decree that the lien of her judgment extended to the proceeds which Sophie Canias had received, and "still retains," from the sale of lot number 26 by her to the Coopers. From the refusal of the court to so decree, the plaintiff, Julia Padis Orphanoudakis, has appealed. (Record No. 4667.)

There is little dispute as to the underlying facts. Julia Pappadis and John Nick Orphanoudakis were married in 1938 and lived in the city of Norfolk. One child, Victor, was born of the marriage in 1940. In 1940 the couple separated. In a divorce proceeding the wife, Julia, was granted a decree *a mensa* and custody of the child. On May 17, 1948, the court entered a merged *a vinculo* decree in favor of the plaintiff wife who was granted custody of the child and an award of $150 per month, representing $75.00 as alimony and $75.00 for support of the child. On the same day the decree was docketed in the Clerk's Office of the Corporation Court of the city of Norfolk against "John Orphanoudakis," that being the name in which the divorce suit had been instituted and conducted.

On November 10, 1948, William H. Tynes and wife conveyed to John N. Orphan lot number 27 here in controversy. On November

24, 1948, Anthony N. Diaz and wife conveyed to John N. Orphan lot number 26 here in controversy.

By deed dated August 20, 1954, and duly recorded, John N. Orphan conveyed to Sophie Canias lots numbers 26 and 27. While the consideration named in the deed was "Ten ($10.00) Dollars and other good and valuable considerations," it is undisputed that the real consideration was the sum of $12,000 which Sophie Canias had loaned to the grantor.

By deed dated September 7, 1954, Sophie Canias conveyed to Arthur Cooper and Eleanor Cooper, his wife, lot number 26 for the sum of $8,000 cash.

It is undisputed that John Orphanoudakis and John N. Orphan are one and the same person. He was born in Greece under the name of Orphanoudakis. He came to this country and was naturalized on September 28, 1918, under the name of John Nick Orphan. Thereafter, for more than thirty years, he lived in Norfolk under the names of Orphan and Orphanoudakis. He was registered to vote, conducted a restaurant, paid his federal and state taxes, and was listed in the records of the Norfolk Police Department under the name of Orphan. His son was enrolled in the Norfolk city schools under the name of Orphan.

However, he was married under the name of John Nick Orphanoudakis. In the divorce proceedings Orphanoudakis was given as the name of both his wife and himself. In the Greek community at Norfolk, consisting of more than 500 members, he and his wife were known by the name of Orphanoudakis.

There is evidence that because of the difficulty in pronouncing their native or true names, it was customary for members of the Greek community at Norfolk to use a shorter name. Thus, Orphanoudakis became Orphan and the wife's name of Pappadis was shortened to Padis.

Throughout the years John was listed in the city directories sometimes under one name and sometimes under the other. He was carried on the rolls of the Greek Orthodox Church at Norfolk under both names.

The defendant, Sophie Canias, the sister of John Orphanoudakis, had formerly lived in Philadelphia where her husband operated a restaurant. After his death she sold this business and moved to Norfolk. She acquired valuable real estate in the business district of Norfolk. For a short while she lived in the same house with John and

Julia Orphanoudakis. After the husband and wife had separated in 1940, John made his home with his sister until he left the country in 1954. While Sophie Canias denied actual knowledge of the divorce proceeding and the judgment, there is evidence that papers in connection with that proceeding were served on John in person at the house where she lived and also by the posting of notices of such proceeding on the door of their residence.

[■■] In her assignments of error Sophie Canias attacks the holding of the lower court that the judgment is a lien on lot number 27 which she acquired from her brother and still owns. Whether the judgment docketed in the name of John Orphanoudakis was and is an enforceable lien on the lands which she thereafter purchased from her brother under the name of John N. Orphan, turns upon the proper interpretation and application of our statutes providing for the docketing of judgments.

Code, § 8-377, prescribes the manner in which judgments shall be docketed. Among the requirements is a statement of "the names of all the parties" to the judgment.

Code, § 8-378, requires that every judgment, as soon as it is docketed, shall be "indexed by the clerk in the name of each defendant, * * * and shall not be regarded as docketed as to any defendant in whose name it is not so indexed."

Code, § 8-386, provides that "Every judgment for money rendered in this State by any state or federal court, * * * shall be a lien on all the real estate of or to which the defendant in the judgment is or becomes possessed or entitled, at or after the date of the judgment, or if it was rendered in court, at or after the commencement of the term at which it was so rendered, * * * ."

Code, § 8-390, provides that "No judgment or decree rendered in a court of this State * * * shall be a lien on real estate as against a purchaser thereof for valuable consideration without notice until and except from the time that it is duly docketed in the proper clerk's office of the county or city wherein such real estate may be."

In *Gordon* v. *Rixey*, 76 Va. 694, 702, 703, this court pointed out that "the only persons protected by this section [now § 8-390] is a purchaser of real estate, for value *without notice*, which would otherwise be subject to the lien of the judgment," and that such judgment is a lien on the land of "a purchaser *with notice*." (Emphasis added.) See also, 11 Mich. Jur., Judgments, § 55, pp. 84-85.

Since the judgment here was not docketed and indexed in the name

of the grantor, John N. Orphan, the determinative question is whether the grantee, Sophie Canias, was a purchaser "for valuable consideration without notice," within the meaning of Code, § 8-390.

It is undisputed that the property was conveyed to her in consideration of loans which she had made to her grantor, John N. Orphan. Hence, she was a purchaser "for valuable consideration." But was she a purchaser "without notice"? The lower court held that she was not because she had "constructive notice" of the judgment.

As is said in 66 C. J. S., Notice, § 6, p. 640, "Constructive notice of two kinds has been recognized. One kind of constructive notice is notice which results from a record or which is imputed by the recording statutes, and the other is notice which is presumed because of the fact that a person has knowledge of certain facts which should impart to him, or lead him to, knowledge of the ultimate fact. * * *" See also, Minor on Real Property, 2d Ed., Vol. 2, § 1318, pp. 1789-1792.

Since the judgment was not docketed in the name of the grantor, Orphan, the lower court was evidently using the term constructive notice in the latter sense, which is closely akin to implied notice. 39 Am. Jur., Notice and Notices, § 6, p. 235.

"* * * [I]mplied notice is generally regarded as a kind of actual notice which consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact; * * *." 66 C. J. S., Notice, § 5, p. 638. See also, Minor on Real Property, 2d Ed., Vol. 2, § 1317, p. 1789; 39 Am. Jur., Notice and Notices, § 6, p. 235.

Whether the present case is one of implied actual notice or constructive notice we need not decide, for the result is the same. "Regardless, however, of the technical distinction made by some courts between constructive notice and implied actual notice, it is a general rule that knowledge of such facts as should put a prudent man on inquiry as to the title charges a subsequent purchaser with notice, not only of those facts which are actually known, but also of all the other facts which a reasonably diligent investigation would have ascertained, provided the inquiry becomes a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding." 92 C. J. S., Vendor and Purchaser, § 326-a, pp. 231, 232, 233. See also, 55 Am. Jur., Vendor and Purchaser, § 696, p. 1074, § 697, pp. 1075-1077; Minor on Real Property, 2d Ed., Vol. 2, §§ 1317, 1318, pp. 1789-1792.

This principle has been applied by this court in numerous cases,

among which are *Fischer* v. *Lee*, 98 Va. 159, 163, 35 S. E. 441; *University of Richmond* v. *Stone*, 148 Va. 686, 693, 139 S. E. 257; *Chavis* v. *Gibbs*, 198 Va. 379, 385, 94 S. E. 2d 195, 199.

In the present case the grantee, Sophie Canias, by reason of the docketing and indexing of the judgment in the name of John Orphanoudakis, had constructive notice of such judgment, that is, notice imputed to her by the record. She, of course, had actual notice that that was her brother's true name. She also had actual notice that he was using the name of Orphan, for she took title to the property from him by a conveyance in that name. Living in the house with him for fourteen years prior to the conveyance it is not unreasonable to say that she had actual knowledge that he was known and did business under both names. Before taking title to the property from him, reasonable prudence required that she examine the records for liens docketed against him in both names. Had she done this, she would have discovered the judgment which was docketed against her brother in his true name. Means of knowledge with the duty of using it is equivalent to knowledge itself. *Smith* v. *Bailey*, 141 Va. 757, 769, 127 S. E. 89.

We are not impressed with the argument that Sophie Canias understood and spoke English poorly and was, therefore, not chargeable with notice that her brother was known and was doing business under both names. The fact that she had been married to a successful business man in Philadelphia and after his death there had settled his estate, disposed of her property there, moved to Norfolk and acquired valuable real estate in the business section of the latter city, shows that she was a business woman of judgment and was probably well aware of what was going on around her.

In Merrill on Notice, Vol. 2, § 1094, pp. 776, 777, we find this statement which is applicable to the situation here:

"* * * Of course, under our law, in the absence of statutory prohibition, one may designate himself by as many names as he wishes. It follows that, if his employment of an additional name is generally notorious, *or is known to the person concerned,* a recorded instrument referring to him by that style will be notice though it is not his true name. The same rule applies to the use of a nickname. In either case, record in the adopted name affords notice to one dealing with the man under his true name. Conversely, if one who acquired title under a nickname or an assumed name executes an instrument relating thereto in his true name, the record of this instrument is notice to a

person subsequently dealing with him under the nickname. The rule creates a duty of ascertaining all the appellations by which titleholders are known in the community. Whether particular designations are generally known in the vicinage is a question for the triers of fact." (Emphasis added.)

In *Henry* v. *Sanders*, 212 N. C. 239, 193 S. E. 15, it was held that a judgment docketed and indexed in the name of Minnie Brewer was a lien on land which she conveyed under her married name, Minnie Baynard, to one who had actual knowledge of the vendor's name before marriage. This was upon the principle that the purchaser who had actual knowledge of the vendor's name before marriage was required to examine the records for liens in that name. In that case the North Carolina court declined to follow the contrary holding in *Huff* v. *Sweetser*, 8 Cal. App. 689, 97 P. 705.

In *Bankers Loan & Investment Co.* v. *Blair*, 99 Va. 606, 611, 39 S. E. 231, 86 Am. St. Rep. 914, we held that the docketing and indexing of a judgment in the name of Mrs. T. Frank Simmons was not constructive notice that it was a lien upon land standing upon the record in the name of May M. Simmons against a purchaser who did not have actual knowledge of the fact that Mrs. T. Frank Simmons and May M. Simmons were the same person. But unlike that case, here the vendee, Sophie Canias, had actual knowledge that the vendor, her brother, was known by both names.

For these reasons, we affirm the holding in the decree appealed from that the judgment in favor of Julia Padis Orphanoudakis was and is a lien on lot number 27 owned by Sophie Canias.

The appellant, Julia Padis Orphanoudakis, contends in her assignment of error that the court erred in refusing to decree that the lien of her judgment extends to the proceeds which Sophie Canias had received and still retains, if any, from the sale of lot number 26 by her to the Coopers. There are two ready answers to this contention:

In the first place, no much claim was asserted by this appellant in her pleadings. Indeed, so far as the record shows, this claim was first advanced at the time the decree appealed from was entered and after the court had held and decreed that the appellant's judgment was not a lien on the lot which Sophie Canias had sold to the Coopers.

In the next place, a similar claim was asserted and rejected by this court in *Jones* v. *Hall*, 177 Va. 658, 15 S. E. 2d 108. There we held

that the lien of a judgment attaches to the debtor's land but not to the proceeds of the sale thereof.

The appellant, Julia Padis Orphanoudakis, contends in her brief that the lower court should have decreed that Sophie Canias held the proceeds of the sale of the lot as constructive trustee for the benefit of the appellant. But here, too, such claim comes too late. No such claim was made in the court below, nor is it within the purview of this appellant's single assignment of error which is, that "The court erred in refusing to decree that plaintiff's lien extends to the proceeds of the sale of the said lot 26 in the hands of defendant Sophie Canias."

For these reasons the decree appealed from is affirmed. In Record No. 4668 the appellee, Julia Padis Orphanoudakis, will recover the costs of her appeal against Sophie Canias. In Record No. 4667 the appellee, Sophie Canias, will recover her costs of appeal against Julia Padis Orphanoudakis.

*Affirmed.*