## In re SHOOTING STAR ENTERPRISES, INC.
### Debtor.

**John P. STODD, Appellant,**

v.

**Forrest S. REYNARD, Appellee.**

**BAP No. CC 87–1235 MoVJ.**

**Bankruptcy No. SA 84–03969 PE.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted June 17, 1987.

Decided July 24, 1987.

John E. Barnett, Stodd & Barnett, Santa Ana, Cal., for appellant.

Jeffrey D. Cawdrey, Procopio, Cory, Hargreaves & Savitch, San Diego, Cal., for appellee.

Before MOOREMAN, VOLINN and JONES, Bankruptcy Judges.

## OPINION

MOOREMAN, Bankruptcy Judge:

This appeal arises out of the trial court's order directing the trustee to render an accounting and to turnover funds received in the court approved sale of the trustee's "right, title and interest" in the estate. The issue presented by the briefs is whether funds received by the trustee in the sale of his right, title and interest in encumbered assets of the estate constitute "proceeds" within the definition of the California Commercial Code.

## FACTS

Shooting Star Enterprises, Inc. ("Debtor") filed a voluntary petition under Chapter 11 on October 4, 1984. Commercial Credit Business Loans, Inc., ("CCBL") was the major secured creditor with a perfected security interest in all the debtor's existing and after acquired property. The debtor's obligation to CCBL exceeded $400,000 and was guaranteed by Forrest S. Reynard ("Reynard"). On November 21, 1984, the trial court entered a final order approving a stipulation between CCBL and the debtor regarding the use of cash collateral. On January 31, 1985, the case was converted to Chapter 7. During the course of the administration, the trustee sold inventory and collected accounts receivable, remitting the proceeds to CCBL and reducing the debt.

Eventually, the appellee, Reynard, paid $62,406.12 on March 31, 1986, and was assigned all "rights and claims" that CCBL

had in the remaining assets which were valued at approximately $90,000. On May 30, 1986, over the objection of Reynard, the bankruptcy court approved the sale of "the remaining assets" to Hal-Optic, Inc. The confirmed terms of the sale were for:

a price of $5,000, plus the amount necessary to pay the unpaid Chapter 7 business operation bills estimated at $17,000, for all of the Trustees [sic] right, title and interest in and to the following described assets:

| | |
|---|---|
| —Pre-Petition Accounts Receivable .. | $20,000 |
| —Inventory ...................... | $70,000 |
| —Intangibles, including but without limitation, the names "Shooting Star Enterprises," "Dyn-Optics," "Brightest Star Electronics," and "fire finder" ..................... | Unknown |
| —The right to Oklahoma oil wells paid for by the Debtor ............ | Unknown |

Said sale is expressly subordinate and subject to the rights of Commercial Credit Corp., [and] its assignee, if any, and Joseph F. Hall, Jr.,[1] the secured lenders in some or all of the items described hereinabove.

After the order confirming the sale, the trustee received a cashiers check in the amount of $5,000, payable jointly to Reynard and the trustee, plus $13,800; the amount necessary to pay the unpaid Chapter 7 business operating bills. Out of the $13,800, $12,461.74 was expended by the trustee in payment of the Chapter 7 bills, with an apparent excess or "overpayment" of $1,338.26.

On September 15, 1986, Reynard filed a motion for an order directing the trustee to render an accounting and to turnover all the funds received by the trustee arising out of the sale. After a hearing on the motion, the bankruptcy court determined that the funds received were "proceeds" under California Commercial Code section 9306 and the motion was granted "subject to the rights of the Trustee under 11 U.S.C. 506(c)."

On November 10, 1986, the trustee filed a motion for reconsideration, which was denied by the bankruptcy court on December

ber 2, 1986. Subsequently, Reynard and the trustee stipulated to turnover of the check in the amount of $5,000, then held by the trustee, with the remaining $1,338.24 to remain in the trustee's account pending the outcome of this appeal.

## DISCUSSION

Determining whether certain funds are "proceeds," for purposes of Article 9 of the Commercial Code, is generally considered a question of fact and requires a showing that the funds are traceable to secured collateral. In the instant case, however, the appellant/trustee asserts that the trial court erred in determining that monies received from the sale of his "right, title and interest" in the estate were proceeds within the definition of the California Commercial Code. Since the bankruptcy court's decision constitutes a conclusion of law, this Panel will review such decisions *de novo. Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Section 9306 of the California Commercial Code defines proceeds as follows:

"Proceeds"; Secured Party's Rights on Disposition of Collateral

(1) "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "non-cash proceeds."

(2) Except where this division or subdivision (4) of Section 8321 otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifia-

---

**1.** The purchaser, Hal-Optic, Inc., is the corporate entity of Joseph F. Hall one of the guaran- tors along with Reynard.

ble proceeds including collections received by the debtor.

Cal.Commercial Code section 9306(1), (2) (West 1987).

The appellant argues that he sold only his "right, title and interest" in the collateral and not the collateral itself. He further argues that a trustee's right, title and interest is "no more than an inchoate, nebulous, barely colorable intangible right vested in him alone, as a creature of statute, and being a thing of value only to the estate." Appellant's Brief at 4. The appellant, therefore, argues that the collateral was "not disposed of," thus, no proceeds were obtained.

The appellant cites the case of *Hagan v. Gardner*, 283 F.2d 643 (9th Cir.1960) in support of his argument. However, that case involved a trustee who held a lien on certain property and subsequently sold it to a third party. The court held that by delivery of a quitclaim deed to the third party, "the trustee did not and could not effect the appellant's title." *Id.* at 646. The *Hagan* case did not involve "proceeds" and was essentially the opposite of this case. The instant case involves a trustee selling the right, title and interest in the property, not a lien, therefore, the appellant's authority is inapplicable.

Section 70a of the Bankruptcy Act clearly provided for the vesting of title to the debtor's property in the trustee. This vital notion allowed for the effective liquidation of a debtor's estate. Under the present Bankruptcy Code, this same essential doctrine is set forth in section 323(a): "Role and capacity of the trustee. (a) The trustee in a case under this title is the representative of the estate."

Although section 323(a) does not specifically provide for the "vesting" of title in the trustee, "it is based on the same reasoning as the provision for the vesting of title in the trustee under Section 70a of the Act, with a view toward the effective liquidation of the debtor's property." 2 Collier, Bankruptcy 323.01 (15th ed. 1986). The Supreme Court has recently stated that "the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor." *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1993, 85 L.Ed.2d 372 (1985) (holding trustee's authority includes control of the corporation's attorney-client privilege) (citing 2 Collier, Bankruptcy 323.01 (15th ed. 1984)).

Based on these general principles of bankruptcy law, when a trustee sells his right, title and interest in the remaining assets of the estate, he is selling the assets and thus, "disposing" of the property. The consideration generated from that sale would normally constitute "proceeds" as defined by the commercial code.

A different outcome is warranted, however, where the trustee sells his right, title and interest, expressly *subject to a secured interest*. Money received for that interest is more logically associated with the "equity" in the property, or the value of the property less the amount of the lien.

In the instant case, the collateral in question had a value of over $90,000 yet it was purchased by Hal-Optic, Inc., for $18,800 *subject to a priority interest*. On its face, it would seem that Hal-Optic's intent was merely to purchase what it saw as the "equity cushion" in the collateral. Further, Reynard's priority interest is in the amount of approximately $62,000 while the trial court's order sets the value of the collateral at approximately $90,000. It seems consistent then that some equity cushion existed and that the trustee's right, title and interest was nothing more.

Although it is well recognized that the term "proceeds" is to be given a broad and flexible interpretation, it is also recognized that "[p]roceeds constitute whatever is *substituted* for the original collateral." *E.g. In re Judkins*, 41 B.R. 369, 372 (Bankr.M.D.Tenn.1984) (emphasis added); *In re SMS, Inc.*, 15 B.R. 496 (Bankr.D.Kan.1981). By specifically ordering the sale subject to the priority interest, the trial court has left the collateral fully intact and no "substitution" has occurred. Thus, the trial court has applied the term "proceeds" to the trustee's right, title and interest in a manner inconsistent with its prior order approving the sale subject to a priority interest.

By earmarking the funds received from the sale of his right, title and interest as "proceeds," the trial court is effectively allowing Reynard a double recovery: both in the proceeds and in his secured interest in the collateral. In support of this argument we look to the language in the comments to section 9306 which is set forth as follows:

> [S]ince the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion. Subsection (2) codifies this rule. The secured party may *claim* both proceeds *and* collateral, but may of course have *only one satisfaction.*"

Cal.Commercial Code section 9306, UCC comment 3 (West 1987) (emphasis added). Although this language concerns a private sale without the secured party's consent, it recognizes the intent of preventing a double recovery by allowing a single satisfaction.

Since the instant case involves a *judicial sale* of the equity cushion in the remaining assets of the estate, the importance of preventing a double recovery is even greater. To now allow the appellee to obtain the proceeds from this judicial sale, while retaining his fully secured priority interest, would be to allow him an unjustified double recovery not contemplated by section 9306.

Accordingly, the order of the trial court is REVERSED.