OLD STONE BANK, Plaintiff–Appellant,

v.

TYCON I BUILDING LIMITED
PARTNERSHIP, Defendant–
Appellee.

No. 90–2498.

United States Court of Appeals,
Fourth Circuit.

Argued April 9, 1991.

Decided Sept. 26, 1991.

As Amended Oct. 28, 1991.

Daniel G. Grove, Keck, Mahin & Cate, Washington, D.C., argued (Carol A. Joffe, on brief), for plaintiff-appellant.

Bruce Wayne Henry, Hunton & Williams, Fairfax, Va., argued (Sandra P. Mozingo, on brief), for defendant-appellee.

Before WIDENER, WILKINSON and HAMILTON, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

This appeal involves a dispute between a secured creditor and the bankruptcy estate of a debtor over an earnest money deposit forfeited when the sale of the real estate securing the debt failed to close. The district court affirmed the bankruptcy court's decision to award the deposit to the debtor's estate.

We reverse. The broad wording of the deed of trust covering the real estate granted appellant Old Stone Bank a security interest in the property itself and in revenue derived from use of the property. The earnest money deposit was paid in exchange for rights in the property and flowed from a disposition of the property. The deposit therefore represents proceeds of the real estate subject to Old Stone's

lien. *In re Aldersgate Found., Inc.*, 878 F.2d 1326 (11th Cir.1989).

### I.

In June 1984, Old Stone Bank lent $7 million to Tycon I Building Limited Partnership (the debtor) to purchase land and an office building located in Fairfax, Virginia. In exchange for the loan, Old Stone received a security interest in the Fairfax real estate. The security interest was memorialized in a deed of trust that broadly defined Old Stone's interests in the Fairfax property. The debtor granted to the trustee in fee simple the Fairfax property, together with all improvements erected on the property and all materials intended for use in constructing the improvements. The deed also granted Old Stone an interest in, among other things: (1) "all rents, issues, and profits arising from" the property in the event of debtor's default; (2) any "additional right, title, or interest" in the property that might be acquired by the debtor; (3) all fixtures and personal property used in connection with the property; and (4) all insurance proceeds payable in connection with any damage to the property and all compensation arising from the exercise of eminent domain. The deed of trust containing these provisions was properly recorded, thereby perfecting Old Stone's first lien on the property.

In August 1988, the debtor defaulted on its loan repayment obligations to Old Stone. When the debtor did not cure its default, a foreclosure sale of the property was scheduled for November, 18, 1988. Just two days prior to the proposed sale the debtor filed for bankruptcy under Chapter 11. The Chapter 11 filing resulted in an automatic stay of the foreclosure sale.

In April 1989, Old Stone moved the bankruptcy court for relief from the automatic stay so that the property could be sold before its market value declined and before Tycon's total debt on the note increased beyond the nearly $8 million already due. Tycon countered that it had arranged for the sale of the property for $9.5 million. The bankruptcy court ordered the automatic stay continued for sixty days to accommodate closing on the proposed sale. The court authorized Tycon to sell the property free of all liens, with Old Stone's lien to attach to the proceeds of the sale. The potential purchaser of the property did not close on the deal, however, and forfeited its $100,000 earnest money deposit. On September 29, 1989, the bankruptcy court granted Old Stone's request for relief from the automatic stay. Three months later Old Stone foreclosed its deed of trust on the property. The foreclosure sale resulted in a substantial deficiency in the amount owed Old Stone.

Old Stone had earlier petitioned the bankruptcy court to have the forfeited earnest money deposit applied toward satisfaction of its lien. The court noted that the earnest money deposit might be covered by the deed of trust if it were considered proceeds arising from the substitution of collateral. The court reasoned, however, that no substitution of collateral had occurred because the original collateral remained intact when the deposit was forfeited. The court concluded that the deposit—characterized as liquidated damages in the contract of sale between debtor and proposed purchaser—was not subject to Old Stone's deed of trust. Old Stone appealed the decision to the district court which affirmed the judgment that the bankruptcy estate, not the bank, was entitled to the deposit. Old Stone Bank now appeals from the district court's judgment.

### II.

■ Old Stone argues that the deed of trust itself grants a security interest in the earnest money deposit. It adds that when the deed is read as a whole and in conjunction with an understanding of the commercial realities associated with its transaction with the debtor, there can be no doubt that it is entitled to the earnest money deposit. For its part, Tycon argues that the deposit does not fit within any of the categories of security interests, such as proceeds, that are conceivably covered by the deed. In this section, we shall address whether earnest money associated with a contract for a

sale of land may constitute proceeds subject to the deed of trust. In section III, we shall examine the deed as a whole in the context of the commercial realities present in the case.

We note at the outset that the deed of trust unquestionably covers the property itself. In this regard, the deed provides that the debtor does "hereby grant, bargain, sell, and convey ... in fee simple, that certain real property situated in Fairfax." It is further clear that Old Stone's security interest would attach to proceeds derived from any disposition of the property. We reject Tycon's contention that even if the deposit is classified as proceeds, Old Stone does not have a valid security interest in proceeds because they are not explicitly mentioned in the deed of trust. The contention in fact merits little discussion because the well established commercial practice is that a security interest in collateral extends to the proceeds of collateral even if they were not mentioned in the governing security agreement. *See* Va. Code Ann. § 8.9–306(2); *In re John Deskins Pic Pac, Inc.* 59 B.R. 809 (Bankr. W.D.Va.1986); J. White and R. Summers, *Uniform Commercial Code*, § 22–11, at 1008 (3d ed. 1988). Any contrary rule would allow a debtor to defeat a security interest simply by selling the collateral out from under the creditor and retaining possession of the proceeds.

The more interesting question is whether the earnest money deposit was derived from a disposition of the collateral and may therefore properly be classified as proceeds subject to Old Stone's security interest. The starting point for determining whether the deposit is appropriately characterized as proceeds is the definition of proceeds contained in the Virginia codification of the Uniform Commercial Code. While the UCC does not of course govern the outcome of this suit involving real property, both sides agree that it provides persuasive authority in these circumstances. Section 8.9–306(1) of the Va.Code Ann. states that " 'Proceeds' includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or

proceeds." The question then is whether the earnest money deposit was received upon the disposition of the Fairfax property. We believe, along with the two courts that have squarely addressed the question, that a forfeited earnest money deposit is received upon the disposition of property and should be classified as proceeds. *See In re Aldersgate Foundation, Inc.* 878 F.2d 1326 (11th Cir.1989); *In re Vandevender,* 87 B.R. 59 (Bankr.S.D.Ill.1988).

The *Aldersgate* and *Vandevender* decisions share an approach that commends itself to us: they look to the substance rather than the form of the transactions giving rise to the disputed security interests in forfeited earnest money deposits. In *Aldersgate,* the Eleventh Circuit rejected the argument, similar to one advanced by Tycon, that unconsummated sales of real estate cannot produce proceeds. The court observed that "when the would-be purchasers deposited the earnest money on the properties they were, in essence, obtaining the right to purchase the land." 878 F.2d at 1328. The existence of the deposit prevented anyone else from buying the property and prevented the trustee from selling it to anyone else. "A valuable right to the property was conveyed. Selling that right to purchase the property at a given price was a disposition of the collateral, and the forfeited deposits thus fall within the statutory definition of proceeds." 878 F.2d at 1328. Tycon makes no real effort to distinguish the *Aldersgate* case, but simply invites us to reject *Aldersgate* as unpersuasive. We decline this invitation both because we see no reason to create a gratuitous inter-circuit conflict (albeit on a question of state law impacting bankruptcy administration) and because we find the reasoning of *Aldersgate* to be quite persuasive on this question.

The question of whether earnest money constitutes proceeds was also addressed in *Vandevender.* The court there rejected a bankruptcy trustee's attempt, similar to that of Tycon, to label a forfeited earnest money deposit as liquidated damages that would be considered unencumbered assets of the bankruptcy estate. 87 B.R. at 60–61. The court held instead that an earnest

money deposit forfeited to a bankruptcy trustee constituted proceeds because it was derived from the property that was subject to the creditors' liens. "But for the sale of the encumbered property, the earnest money deposits would never have been forfeited to the trustee." *Id.* at 61. Therefore, the forfeited deposit was derived from a sale of the land and was to be classified as proceeds subject to the secured creditors' liens. *Id.*

Tycon urges us to reject *Vandevender* also and to focus instead on the labeling of the earnest money deposit as liquidated damages. In our view, a label placed on the deposit cannot obscure the reality that the deposit constituted proceeds—it was given for the right to buy the property, it was intended as a downpayment on the purchase of the property, and without the property the earnest money would never have come into existence. Adopting Tycon's approach would enable debtors to evade valid security interests simply by the way they chose to label transactions of which a secured creditor might not even be aware.

Tycon also argues that *Aldersgate* and *Vandevender* ignored the crucial determinant of whether a sum of money constitutes proceeds. Tycon contends that proceeds are whatever substitutes or replaces the collateral subject to a security interest. According to Tycon, there can be no substitution of collateral unless there has been a final disposition of the collateral. An unconsummated sale of property cannot produce proceeds because the collateral remains intact.

We find Tycon's emphasis on the finality of disposition to be misguided, though it serves as a useful counterpoint for our analysis. If the proposed sale of land had been completed in this case, the contract of sale provided that the deposit would be applied against the purchase price. The deposit, in turn, undoubtedly would have been part of the proceeds of sale subject to Old Stone's security interest. In our view, Tycon has offered no persuasive reason why Old Stone has any less right to the deposit simply because the sale was not consummated. Certainly nothing in the language of section 8.9–306 states a requirement that the disposition of collateral must be final in order to generate proceeds.

We are not persuaded, moreover, that the principal cases relied upon by debtor support the proposition that a sale of collateral must be final to qualify as a disposition under section 8.9–306(1). In *In re Shooting Star Enterprises, Inc.*, 76 B.R. 154, 156 (9th Cir. BAP 1987) the court observed that "although it is well recognized that the term 'proceeds' is to be given a broad and flexible interpretation, it is also recognized that proceeds constitute whatever is substituted for the original collateral." Tycon argues that under the reasoning of *Shooting Star* the earnest money deposit did not substitute for the Fairfax property because the property remained intact after the proposed deal failed to close. In *Shooting Star*, however, the notion of collateral remaining fully intact meant that the creditor's security interest remained attached to the collateral and that the value of the collateral covered the creditor's lien. The trustee in that case sold only the debtor's equity in the property that was by definition unencumbered by the creditor's security interest. In effect, the creditor in *Shooting Star* was fully secured both before and after the trustee sold its rights to the property. In this case, by contrast, Old Stone was substantially less than fully secured after the proposed sale failed to close.

Even were we to adopt Tycon's "substitution of collateral" test, however, the earnest money would still go to Old Stone. This is so because there are at least two ways in which the earnest money was substituted for collateral in this case. First, the deposit was received in substitution for part of the collateral—the equitable title to the property. The Supreme Court of Virginia has held that when a contract for the sale of real estate is executed, equitable title to the property vests in the purchaser. *Carmichael v. Snyder*, 209 Va. 451, 164 S.E.2d 703 (1968). "In fact, all the incidents of a real ownership belong to it [the purchaser]." *Id.* 164 S.E.2d at 706. In-

deed, Tycon transferred all the rights to the property which it possessed (equitable title) since legal title had earlier been conveyed to the trustee under the deed of trust. *See Abdelhaq v. Pflug*, 82 B.R. 807 (E.D.Va.1988). Tycon contends, however, that this transfer does not constitute a disposition of the collateral because upon forfeiture, equitable title was reconveyed to Tycon. This ignores the fact that during the pendency of the sales contract the deposit was substituted for valuable rights in the collateral, including the power to sell these rights to another. Thus, the sale of real estate need not be fully consummated to constitute a disposition.

This brings us to the second way in which the deposit substituted for collateral. An important purpose of an earnest money deposit is to compensate for a decrease in the worth of real estate that may occur while it is under a contract of sale. The property, in fact, appeared to decline in value during the pendency of this contract, and the deposit substituted for that decrease. Old Stone, not the debtor, suffered from this decline in value because the value of the collateral was no longer sufficient to cover its lien. Consequently, the concern in this case is not with double recovery as in *Shooting Star*, but with inadequate recovery.* In sum, we believe that the earnest money deposit constituted proceeds of the property and that Old Stone had a valid security interest in those proceeds.

### III.

Our conclusion that earnest money associated with the contract for the sale of the property may constitute proceeds is buttressed by two other elements of the case—the impact of the deed of trust when read in its entirety and the overall commercial realities at issue. Old Stone argues that the language of two other provisions of the trust deed establish that it has a security interest in the earnest money deposit. For one, Old Stone notes that the

deed of trust grants it "all rents, issues, and profits arising from said real property" in the event of debtor's default. Another provision of the deed grants to Old Stone "any and all other, further, and additional right, title, or interest in or to" the property acquired by the Debtor. Tycon responds that neither of these provisions governs the disposition of the earnest money deposit.

We believe, however, that the provisions provide a useful insight into the intended scope of the security agreement. The rents, issues, and profits provision provides Old Stone with a security interest in income generated from the use of the real estate, although it does not speak directly to the sale of land. The second provision provides that an additional acquisition of rights in the property and any corresponding increase in the property's worth associated with those rights would be subject to Old Stone's security interest. When these two provisions are added to the provision granting Old Stone a priority interest in the land itself, the deed of trust as a whole clearly is intended to grant Old Stone a security interest in every facet of the land. The sum of the language in the deed of trust is broad and comprehensive, and we see no reason to give it the cramped interpretation for which appellee contends.

Examining the document as a whole reinforces our belief that the deed cannot be read in a vacuum, but must instead be informed by the commercial realities attending the relationship between Old Stone and Tycon. Tycon attempts to use its bankruptcy filing to achieve greater rights than it would have had prior to bankruptcy. If the original foreclosure sale proposed by the bank prior to bankruptcy had occurred, earnest money deposited by a purchaser who closed on the sale would have become proceeds subject to the Bank's security interest. *See* Va.Code Ann. § 55–59.4(2) & § 55–59.4(3). Had a would-be purchaser forfeited the earnest money, Tycon would have had no right to the deposit. *See* Va.

---

* Tycon also points to *In re Jones*, 19 B.R. 293 (Bankr.E.D.V.A.1982) as support for its position that the earnest money deposit should not be considered proceeds. We believe that *Jones* has little relevance to this case because the debtor in *Jones*, unlike Tycon, was in no way endeavoring to dispose of collateral to generate revenue.

Code Ann. § 55–59.4(2). It is well established that a debtor such as Tycon cannot use the cover of bankruptcy to acquire greater property rights than it was entitled to prior to bankruptcy. *See Creative Data Forms v. Pennsylvania Minority Bus. Dev.*, 72 B.R. 619, 623 (E.D.Pa.1985); L. King, 4 *Collier on Bankruptcy,* section 541.06 (15th ed. 1991).

It is important to recognize that Tycon was essentially a single asset partnership, that sole asset being the Fairfax property. If Tycon had not granted a lender a security interest in every phase of the property, it is unlikely that it would ever have received a loan to purchase the property in the first place. As a single asset partnership Tycon had only one asset to sell in bankruptcy: the Fairfax property fully encumbered by Old Stone's lien. The would-be purchaser of the property was not being charitable when it deposited the earnest money; rather, it was purchasing valuable rights to the property. These rights, and in turn the earnest money used to purchase them, were plainly subject to Old Stone's security interest.

For the foregoing reasons, the judgment of the district court is

REVERSED.

WIDENER, Circuit Judge, dissenting:

The analysis of the majority, in my opinion, is misdirected in several fundamental respects. Simply put, the majority opinion mistakes the source of Old Stone's lien on the "proceeds of sale"; it overlooks the most authoritative interpretation of the

meaning of this term in the context of this case; it relies on the Uniform Commercial Code; and it does not take account of Virginia real estate law. For these reasons, and as set forth more fully below, I respectfully dissent.

The majority correctly notes that the foreclosure sale of the real property in question was stayed by virtue of the automatic stay in bankruptcy. The bankruptcy court then authorized Tycon to sell the property free of all liens, with the lien of Old Stone's deed of trust "to attach to the proceeds of sale." If the deed of trust lien attaches to the security deposit in question, it is therefore by virtue of the language of this order of the bankruptcy court. The majority, however, very nearly ignores the order of the bankruptcy court and dwells exclusively on the language of the deed of trust, which does not even mention proceeds of sale.[1] I believe that this approach is incorrect because the earnest money deposit was not incident to a sale under the deed of trust, but rather to the sale under the order of the bankruptcy court.

In its effort to construe the meaning of the term "proceeds of sale," the opinion of the majority draws analogies to the treatment of goods under the Uniform Commercial Code[2] and invokes its broad understanding of "the deed as a whole in the context of the commercial realities present in this case." However, the most important indicator of the meaning of "proceeds of sale" as used in the bankruptcy court's order lies much nearer at hand. We have before us the opinion of the bankruptcy court in which that court has interpreted

---

**1.** The majority states that the absence of express language in the deed of trust concerning proceeds of sale is not important because "the well established commercial practice is that a security interest in collateral extends to the proceeds of collateral even if they are not mentioned in the governing security agreement." While the opinion indicates that security interests in real property come under this general rule, it cites as authority no cases involving real property, but relies on authority involving only personal property under the Virginia codification of the Uniform Commercial Code.

In the context of judgment liens, the Virginia Supreme Court has stated that "the lien ... attaches to the debtor's land but not to the

proceeds of sale thereof." *Orphanoudakis v. Orphanoudakis,* 199 Va. 142, 150, 98 S.E.2d 676 (1957). The Court recognized that "the rights of a ... beneficiary in a deed of trust, whereby specific real estate is conveyed as security for payment of obligations due or to become due, are somewhat analogous to the rights of a judgment lien creditor," but declined to express an opinion on the question. *Jones v. Hall,* 177 Va. 658, 667, 15 S.E.2d 108 (1941). How the majority can discern a "well established" rule in this plain reservation of opinion is unexplained.

**2.** The Uniform Commercial Code, indeed, does not apply to this real estate transaction. Va. Code § 8.9–104(j).

its own order, including the scope of the term "proceeds of sale." This opinion plainly states that "the deposit is not proceeds subject to Old Stone's security interest."

I believe that this interpretation is entitled to deference in view of our long-standing recognition of "the inherent deference due a district court when it construes its own order." *Anderson v. Stephens*, 875 F.2d 76, 80 n. 8 (4th Cir.1989); *Simmons v. South Carolina State Ports Authority*, 694 F.2d 63, 66 (4th Cir.1982) (stating that "the action of the district court in construing its own order ... deserves deference.") Such deference seems particularly appropriate in this case. The record indicates that when the bankruptcy court drafted its order approving the sale and stating that the liens would attach to the "proceeds of sale," it had before it the Agreement of Purchase and Sale in which the $100,000 deposit was termed "liquidated damages." That the bankruptcy court was aware of the contents of the Agreement is shown by the fact that the Agreement is mentioned in this same order in which the court directed that the liens would attach to the proceeds of sale without making any reference to the deposit. In the bankruptcy court's subsequent opinion, it twice referred to the fact that the contract provided that the deposit would be liquidated damages.

Moreover, the record reflects that Old Stone itself approved the sale of the property under the Agreement identifying the deposit as liquidated damages. I suggest the majority's stated preference for substance over form is not more than a slender reed upon which to base a reversal and that Old Stone should not be permitted to escape the consequences flowing from the use of a term which it has itself approved. *The provision in the Agreement identifying the deposit as liquidated damages specifically contemplated the very event that came to pass, namely, the failure of the purchaser to close the sale. It seems to me disingenuous for Old Stone to insist that it intended for the deposit to be treated as proceeds when it consented to a contract that plainly stated otherwise.*

As a subordinate matter, I must also note my disagreement with the majority's statement that its decision is buttressed by the language in the deed of trust concerning "all rents, issues, and profits arising from said real property." Indeed, to the extent that Old Stone relies upon this language to establish a security interest in the earnest money deposit, its position is untenable as a matter of Virginia law in view of the fact that Tycon was a debtor-in-possession at the time its right to the deposit accrued. The Virginia Supreme Court has stated that a debtor-in-possession is "entitled to receive and apply to his own use, the income and profits of the mortgaged estate. And this is true although the mortgage by its terms covers the rents and profits...." *Gibert v. Washington City, Virginia Midland and Great Southern R.R.*, 74 Va. 645, 648 (1881); see *Frayser's Adm'r v. Richmond and Allegheny R.R.*, 81 Va. 388, 391 (1886); 13A Michie's Jurisprudence, Mortgages and Deeds of Trust, §§ 54, 55 ("A mortgagor left in possession of the mortgaged premises is entitled to the rents, issues, and profits of them, without rendering an account of them to the mortgagee, who can never recover them from him."). Although I do not read the majority's decision as relying primarily upon the deed of trust's provision concerning rents, profits and issues, in the face of Virginia authority to the contrary, I disagree with even the suggestion that such language provided Old Stone with a lien on the deposit in question.

Finally, paragraph 7.3 of the Agreement specifically agreed to by Old Stone Bank provides in pertinent part as follows:

"If, at or prior to Closing, the Purchaser defaults ... the Seller shall have the right to retain the [earnest money] Deposit as full and complete liquidated damages...."

I suggest that the majority simply declines to enforce the provisions of this very plainly worded contract.

In conclusion, I am of opinion that the district court did not err in affirming the bankruptcy court's decision to award the

deposit to the debtor's estate. I would affirm.[3]

---

**3.** Neither of the majority's principal authorities, *Aldersgate,* 878 F.2d 1326 (11th Cir.1989) or *Vandevender,* 87 B.R. 59 (Bankr. S.D.Ill.1988), have any real bearing on this case. Neither of them involved a contract at all, much less a contract such as the one here which plainly states that the earnest money is liquidated damages. In addition to *Aldersgate* being decided under Florida law and *Vandevender* under Illinois law, *Aldersgate* depended on the Florida Uniform Commercial Code which has no bearing here. Additionally *Vandevender* followed *Bank of Silvis v. Boultinghouse Auction Co.,* 71 Ill.App.3d 98, 27 Ill.Dec. 455, 389 N.E.2d 267 (1979) which had been followed in *Aldersgate.*