In the matter of ALDERSGATE FOUNDATION, INC., Debtor.

Donald Carl CHURCH, et al., Appellants/Cross Appellees,

v.

Lee Jay COLLING, etc., et al., Appellees,

Freedom Savings and Loan Association, etc., et al., Appellee/Cross Appellant.

No. 85–834–CIV–ORL–19.

United States District Court, M.D. Florida, Orlando Division.

June 29, 1988.

Johnnie A. McLeod, Apopka, Fla., for Donald Carl Church, Donald Carl Church as Trustee for Donald C. Church Trust, Danford J. Quinn, and Ellen Quinn.

David W. Hedrick, Giles, Hedrick & Robinson, Orlando, Fla., for Freedom Sav. & Loan Assn.

Lee Jay Colling, Orlando, Fla., for Lee Jay Colling, Successor Trustee, and Aldersgate Foundation, Inc.

## ORDER

FAWSETT, District Judge.

This case is before the Court upon Appellants/Cross Appellees' Motion for Rehearing, filed April 5, 1988 (Doc. No. 61); Motion of Jay Lee Colling, Successor Trustee, Aldersgate Foundation, Inc. for Rehearing, filed April 5, 1988 (Doc. No. 62); and Motion to Dismiss Motion for Rehearing Filed By Lee Jay Colling, Successor Trustee, filed April 21, 1988 (Doc. No. 63), to which no response has been filed.

The Court hereby DENIES the Motion to Dismiss Motion for Rehearing filed by the Successor Trustee (Doc. No. 63). Accordingly, this Court will consider the Motions for Reconsideration filed by the Successor Trustee and Appellants/Cross–Appellee.

The relevant facts of this case are as follows.[1] Prior to filing a petition for bankruptcy, the debtor, Aldersgate Foun-

1. The facts are set forth more fully in this Court's Order of March 10, 1988 (Doc. No. 56).

dation, Inc., issued first mortgage bonds pursuant to four separate Indentures of Trust. Four groups of bondholders are involved in this case. These four groups of bondholders purchased bonds under Indentures of Trust pledging land in, respectively, Kissimmee, Orange City, Key West, and Englewood, Florida.

The Foundation subsequently filed a petition in bankruptcy. Pursuant to the plan for reorganization pursuant to Chapter 11, the Trustee, Lee Jay Colling, decided to liquidate all of the Foundation's assets. The Trustee contracted to sell the Kissimmee property to Friendly Retirement Center, Inc., at a purchase price of $11,486,-000.00. Friendly defaulted and its earnest money deposit of $500,000.00 was forfeited to the Trustee. The property was eventually sold for $9,750,000.00, which was distributed to the Kissimmee bondholders in full satisfaction of their secured lien. The Trustee also contracted to sell the Key West property to Larry Leatherwood. When Leatherwood defaulted, his earnest money deposit of $20,000.00 was also forfeited to the Trustee. The Key West property was eventually sold for $1,250,000.00. The proceeds from the sale were distributed to the Key West bondholders in full satisfaction of their secured lien. Prior to sale, the sale prices of both properties were approved as fair by the bankruptcy court.

The Trustee subsequently requested authority to allocate and distribute the funds from the forfeited deposits to the appropriate creditors. At a hearing held on the Trustee's application, the following three methods of allocation of the funds were discussed:

(1) Distribution of all forfeited funds to the unsecured creditors on the basis that the forfeited funds were unencumbered assets free of liens or encumbrances.

(2) Distribution of the funds forfeited by Friendly to the Kissimmee bondholders, distribution of the funds forfeited by Leatherwood to the Key West bondholders, and distribution to the unsecured creditors of a portion of the forfeited funds from both locations based on the pro rata value of the personal property to the real property at those locations, on the basis that the forfeited deposits were proceeds of a sale, or rents, issues and profits of the mortgaged Kissimmee and Key West properties.

(3) Distribution of all forfeited funds to all bondholders and unsecured creditors pursuant to the "Surcharge Formula" on the basis that the expenses of the administration of the estate, including the delay which occurred as a result of the defaults and the appeals related to the forfeited funds, were borne by the bondholders and creditors in accordance with the Surcharge Formula; hence principles of equity and fairness dictate that the creditors should receive the distribution of the forfeited funds on the same basis that they bore the liability for the expenses.

The Bankruptcy Court accepted the third alternative and ordered that the $520,-000.00 in earnest money deposits be distributed to the secured and unsecured creditors of Aldersgate under the Surcharge Formula.[2] See Doc. Nos. 19 and 21.

On the appeal of the bankruptcy court's orders concerning distribution of the funds, this Court entered an Order wherein it stated: "The issue before this Court is whether the forfeited earnest money deposits are to be considered proceeds from the sale of real property or whether the forfeit-

**2.** The earnest money deposits were distributed according to the following "Surcharge Formula": 64.3 percent to the Kissimmee bondholders; 21.0 percent to the Orange City bondholders; 6.3 percent to the Key West bondholders; 2.1 percent to the Englewood bondholders; and 6.3 percent to the unsecured creditors of Aldersgate. "This Surcharge Formula was approved by the Bankruptcy Court on October 30, 1978, in order to facilitate the determination of the allocation of revenues, capital improvements and administrative costs among the respective classes of creditors and avoid lengthy and costly adversary proceedings. The formula was arrived at by dividing the Bankruptcy Court's valuation of the real and personal property at each location by the total valuation of all property in the estate resulted in allocating revenue, improvements and costs among the five classes of creditors...." Order on Allocation and Distribution of Funds, Doc. No. 19, at 5–6.

ed funds are to be considered unencumbered assets in the hands of the trustee for the bankruptcy estate." Doc. No. 56 at 4. The Court did not address the argument that the forfeited deposits should be distributed to all bondholders and unsecured creditors pursuant to the Surcharge Formula since all parties had borne the expenses caused by the defaults and subsequent appeals, which was the argument accepted by the bankruptcy court. This Court reversed the decision of the bankruptcy court, finding that the Orange City and Englewood bondholders and the unsecured creditors "should not be permitted to profit from the sale of mortgaged property at the expense of the [Kissimmee and Key West] bondholders." Doc. No. 56 at 8.

In reaching its decision, this Court reasoned that the "proceeds" from the sale of the Kissimmee and Key West real property to which the Kissimmee and Key West bondholders were entitled by virtue of their respective Indentures of Trust included the earnest money deposits forfeited by Friendly and Leatherwood. The Court recognized that no controlling Florida law exists,[3] and relied primarily on Florida's statutory procedure governing judicially ordered sales of real and personal property. Doc. No. 56 at 4–6. This case is presently before the Court on two Motions for Rehearing. Upon consideration, the Court GRANTS such motions (Doc. Nos. 61 and 62).

■ A bankruptcy court's conclusions of law are freely reviewable on appeal. *Matter of T & B General Contracting*, 833 F.2d 1455 (11th Cir.1987); *In re Owen*, 86 B.R. 691 (M.D.Fla.1988); *Charisma Investment Co., N.V. v. Air Florida System, Inc.*, 68 B.R. 596 (S.D.Fla.1986), *aff'd*, 841 F.2d 1082 (11th Cir.1988). However, this Court must accept the factual findings of the bankruptcy court unless they are clearly erroneous. Bankruptcy Rule 8013; *Matter of T &`B; In re Owen*.[4] Due regard

must be given to the bankruptcy court's opportunity to assess the weight of the evidence. *Charisma.*

In its Order, the bankruptcy court found that

the above described Bondholders [Key West, Englewood, Orange City, and Kissimmee] and Unsecured Creditors bore the expenses of the litigation concerning the forfeited funds on the basis of the Surcharge Formula and that it is only fair and equitable that distribution should be made in the same manner, and the Court further finds that it would be in the best interests of this estate and its creditors to distribute the subject forfeited funds to the five classes of creditors on the basis of the Surcharge Formula....

Doc. No. 19 at 7. The Court finds that the bankruptcy court's decision regarding the balancing of the equities in this case is a finding of fact subject to the clearly erroneous standard of review.

■ As the Court noted in its previous Order, no controlling law existed with respect to the issue confronting the bankruptcy court in this case. In fact, in response to the bankruptcy court's inquiry as to whether the determination of the proper allocation of the Leatherwood and Friendly forfeiture fees was a matter of "equitable discretion or law", counsel for ComBank admitted: "I believe there is some discretion involved, as well, in fact it may be mostly a matter of discretion, your honor. None of us could find any case law on it." Similarly, the Trustee stated: "Everything I've found in my research, your honor, is that it is judicial discretion...." Transcript of Hearing Before Judge Alexander L. Paskay on April 29, 1980, to Determine Allocation of Leatherwood and Friendly Forfeiture Monies, Doc. No. 30 at 15–16.

This Court is mindful that "bankruptcy itself is equitable in nature and thus bank-

---

**3.** As the Court noted in its earlier Order, the issue is governed by Florida law. *See Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979) (bankruptcy court's determination of a mortgagee's rights under a mortgage is governed by state law).

**4.** A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

ruptcy proceedings are inherently equitable." *In re Chase & Sanborn Corp.,* 835 F.2d 1341 (11th Cir.1988), *cert. granted,* —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988). Upon reconsideration, this Court concludes that the bankruptcy court's order was not inconsistent with the law. Moreover, the Court finds that the bankruptcy court acted in accordance with principles of equity and was within its discretion in ordering that the forfeited funds be distributed to all bondholders and unsecured creditors. Accordingly, to the extent it is inconsistent with this Order, the Court hereby VACATES its Order of March 10, 1988, wherein it reversed the decision of the bankruptcy court and remanded for further proceedings (Doc. No. 56). The Court hereby AFFIRMS the orders of the bankruptcy court directing that the Trustee distribute the Friendly Retirement and Leatherwood forfeited funds together with all interest earned thereon to the Kissimmee, Orange City, Key West and Englewood bondholders and the unsecured creditors in amounts calculated in accordance with the Surcharge Formula adopted by the bankruptcy court (Doc. Nos. 19 and 21).