**In re Leroy VANDEVENDER and Elizabeth Vandevender, Debtor(s).**

**Donald HOAGLAND, Trustee, Plaintiff,**

**v.**

**ILLINOIS GUARANTEE SAVINGS & LOAN, Farmers State Bank of Palestine and Gene Richardson, Defendant(s).**

**Bankruptcy No. BK 87–30838.
Adv. No. 88–0022.**

United States Bankruptcy Court,
S.D. Illinois.

June 30, 1988.

William K. Thomas, Robinson, Ill., for trustee/plaintiff.

William W. Austin, Effingham, Ill., for Ill. Guaranteed S & L.

Andrew J. Wapner, Robinson, Ill., for Gene L. Richardson.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on Illinois Guarantee Savings & Loan Association's (hereafter movant) Motion Seeking Supplementation and Modification of Order Approving and Confirming Report of Sale. The facts of this matter are not in dispute. On February 6, 1988, pursuant to movant's request, certain real estate owned by debtors was offered for sale by the trustee at public sale. Movant, prior to the sale, agreed to pay all administrative costs associated with the sale. The real estate in question was subject to a first mortgage to movant, a second mortgage to Farmers State Bank of Palestine, Illinois and a subordinate judgment lien in favor of Gene Richardson. The real estate was to be sold free and clear of liens and encumbrances with valid liens to attach to the proceeds of sale.

At the sale of the real estate, the trustee accepted the highest and best bid of $24,-100.00 from a party not involved in this litigation (hereafter bidder) and this bidder deposited $2,000.00 as earnest money with the trustee. Movant bid the sum of $24,-000.00, the next highest bid.

On February 8, 1988, the bidder withdrew his bid and movant renewed its bid of $24,000.00. Movant's bid was accepted by the trustee. The trustee retained the $2,000.00 earnest money deposited with him by the bidder.

Movant argues that the $2,000.00 should inure to its benefit as proceeds of the sale. According to movant, the funds are to be offset against its bid of $24,000.00 or against its obligation to pay the costs of sale. The trustee argues that the $2,000.00 is a windfall to the bankruptcy estate because the funds are in the nature of liquidated damages for breach of the contract of sale rather than the result of a completed sale. According to the trustee's argument, this money should be distributed among the unsecured creditors. However, neither party has provided the Court with any authority in support of its position.

The issue before the Court is whether the forfeited earnest money is to be considered proceeds from the sale of the real property or unencumbered assets held by the trustee for the unsecured creditors of the bankruptcy estate. This is a matter of first impression before this Court. In fact, in a thorough search, the Court has been able to find only one case addressing this issue. *In re Aldersgate Foundation, Inc.,* 84 B.R. 222 (M.D.Fla.1988). The Court finds the reasoning of the district court in *Aldersgate* to be persuasive.

In *Aldersgate,* the court determined that resolution of this question is governed by state law. *In re Aldersgate Foundation, Inc.,* 84 B.R. at 224 (citing *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Upon finding no Florida case law on point, the district court turned to Florida's statutory procedure concerning judicially ordered sales of real

property. The court found that the statutory definition of "proceeds," Fla.Stat. § 679.306(1), "include[d] whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." *Id.* Further, the court found that under Fla.Stat. § 45.031(2) the secured party/judgment creditor at a judicial sale was entitled to have the proceeds from any deposit made by a defaulting purchaser applied towards satisfaction of the secured creditor's judgment. *Id.* at 224–25. Accordingly, the district court concluded that down payments forfeited to the trustee in bankruptcy upon default in sales of property of the bankrupt estate constituted "proceeds" of the sales because "they were produced and derived from the real and personal property that was the subject of the contracts of sale and the [creditors'] liens." *Id.* at 225. In other words, the court found that but for the sale of the encumbered property, the earnest money deposits would never have been forfeited to the trustee. *Id.* at 224. Having determined that the forfeited earnest deposits were "proceeds" of the sales, the district court then held that unsecured creditors would not be permitted to profit from the sale of mortgaged property at the expense of the secured creditors holding liens on that property.

The Illinois statutory scheme governing judicially ordered sales of real property does not define what constitutes "proceeds" of the sale. Nor does Illinois have a statute akin to Fla.Stat. § 45.031(2). Moreover, the Court has been unable to find any Illinois case law on all fours with the instant case. However, *Bank of Silvis v. Boultinghouse Auction Co.*, 71 Ill.App.3d 98, 27 Ill.Dec. 455, 389 N.E.2d 267 (1979), *cited in In re Aldersgate Foundation, Inc.*, 84 B.R. at 225, is instructive. In *Bank of Silvis*, the Illinois court held that where an auctioneer's contract entitled him to three percent of the total "proceeds" from the sale of certain real estate, a down payment forfeited by a defaulting prospective purchaser constituted "proceeds" from which the auctioneer was entitled to take his percentage. *Id.* The court defined "proceeds" from the sale as "something

actually received in hand. Proceeds has been defined as 'what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue: the total amount brought in ...the net sum received....'" *Id.*, 27 Ill.Dec. at 457, 389 N.E.2d at 269 (*quoting Webster's Third New International Dictionary Unabridged* (1961).

Accordingly, the Court finds that the forfeited funds in the trustee's possession herein are "proceeds" of the sale of debtors' real estate to which the secured creditors with valid liens on the real estate are entitled to attach their liens in priority order. The Court rejects the argument that these are unencumbered assets belonging to the unsecured creditors of the estate.

Movant agreed to pay $24,000.00 and the costs of the sale for the purchase of the real estate. Contrary to movant's argument, there is no basis to offset the $2,000.00 against movant's bid of $24,-000.00. And, because movant has failed to provide evidence of an agreement with the mortgagors as to costs, either by way of response to the Complaint or at the hearing of this matter, the Court has no grounds upon which to allow movant to recover costs of the sale. 11 U.S.C. § 506(b). See also Ill.Rev.Stat. ch. 110, para. 15–1510. Proceeds of sale totaling $26,000.00 shall be distributed in order of priority to lienholders with valid liens against the real property. Movant shall pay the costs of the sale.

IT IS ORDERED that the Order Approving and Confirming Report of Sale is modified in conformity with this Order.