878 F.2d 1326
 In re ALDERSGATE FOUNDATION, INC., Debtor.
Donald Carl CHURCH, et al., Plaintiffs-Appellants, Cross-Appellees,
v.
Lee Jay COLLING, Successor, Trustee, Aldersgate Foundation,
Inc., Defendants-Appellees, Cross-Appellees,
Securities & Exchange Commission, Defendant,
Freedom Savings and Loan Association, Defendant-Appellee,
Cross-Appellant.
 No. 88-3598.
 United States Court of Appeals,
Eleventh Circuit.
 July 31, 1989.
 
 Johnie A. McLeod, McLeod, McLeod & McLeod, P.A., Apopka, Fla., for Donald Carl Church.
 David W. Hedrick, Giles, Hedrick & Robinson, P.A., Orlando, Fla., for Freedom Sav. and Loan Ass'n.
 Lee Jay Colling, Colling & Beattie, P.A., Douglas B. Beattie, Orlando, Fla., for Colling and Aldersgate Foundation, Inc.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HILL and EDMONDSON, Circuit Judges, and GARZA*, Senior Circuit Judge.
 EDMONDSON, Circuit Judge:
 
 
 1
 In this bankruptcy case, we reverse the district court's order and remand with instructions.
 
 BACKGROUND
 
 2
 Before filing a petition for bankruptcy, the debtor, Aldersgate Foundation, Inc., issued first mortgage bonds pursuant to four separate Indentures of Trust. Each Indenture of Trust pledged as security one of four tracts of land: property in Kissimmee, Key West, Orange City and Englewood, Florida. The bondholders were secured by the property and any "proceeds realized from any sale or sales of the property."
 
 
 3
 After Aldersgate filed a petition in bankruptcy, the Trustee, pursuant to the plan for reorganization, decided to liquidate all of Aldersgate's assets. The Trustee contracted to sell the Kissimmee property to Friendly Retirement Center, Inc. Friendly defaulted on its contract to purchase, forfeiting to the debtor's estate its earnest money deposit of $500,000. The Trustee also contracted to sell the Key West property to Larry Leatherwood. When Leatherwood defaulted on his contract, his earnest money deposit of $20,000 was also forfeited to the debtor's estate. Both the Kissimmee and Key West properties were eventually sold for sums that were distributed to the bondholders secured by those properties.
 
 
 4
 The Trustee requested authority to allocate and distribute to creditors the funds from the forfeited deposits. The bankruptcy court, using a formula that allocated certain expenses associated with the bankruptcy, ordered the $520,000 distributed to all the bondholders and unsecured creditors.[1] The district court reversed, determining the forfeited deposits to be proceeds from the sale of the Kissimmee and Key West properties. The Trustee's motion for rehearing was granted and the district court reversed itself, affirming the bankruptcy court. 87 B.R. 687. We agree with the district court's first determination that the forfeited deposits were proceeds of the sale of the Kissimmee and Key West properties. We therefore reverse and remand with instructions to allocate the deposit forfeited by Friendly to the Kissimmee bondholders and to allocate the deposit forfeited by Leatherwood to the Key West bondholders.
 
 DISCUSSION
 
 5
 The issue before this court, whether the forfeited earnest money deposits are proceeds from the sale of the real property securing the mortgage bonds or unencumbered assets of the bankruptcy estate,[2] is a question of law. We refer to Florida law to resolve the question. Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Although we are aware of no Florida cases that have specifically decided this issue, we are guided by the definition of proceeds in Florida's Uniform Commercial Code provision on secured transactions, by Florida's statutory procedure regarding judicially ordered sales of real property and by cases in which Florida courts have considered the enforceability of real estate contracts calling for the forfeiture of earnest money deposits.
 
 
 6
 Florida Statute sec. 679.306(1) (West Supp.1989), part of the Uniform Commercial Code secured transactions, and entitled "Proceeds"; secured party's rights on disposition of collateral, provides as follows: " 'Proceeds' includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." In this case, the deposits were made because of a sale contract. When the would-be purchasers deposited the earnest money on the properties they were, in essence, obtaining the right to purchase the land. No one else could buy it; and the trustee could not sell it to anyone else. A valuable right to the property was conveyed. Selling that right to purchase the property at a given price was a disposition of the collateral, and the forfeited deposits thus fall within the statutory definition of proceeds. We disagree with the proposition that, because the sale was not consummated, the deposits were not proceeds.
 
 
 7
 Under Florida statute, the successful bidder at a judicial sale must post a deposit, which is applied to the sales price at the time of payment. Fla.Stat.Ann. sec. 45.031(2) (West Supp.1989). If the buyer defaults and final payment is not made, all costs of the sale are paid from the deposit and any remaining funds are applied toward the judgment. Id. It thus appears that under Florida's statutory scheme, the funds deposited for the purchase of property at a judicial sale become the property of the judgment creditor upon default.
 
 
 8
 If this case involved only the sale of real estate, the seller of the real property or a third-party beneficiary, such as a secured lienholder, would be entitled to keep any earnest money deposit made by a defaulting purchaser. See, e.g., Brusko v. Circle of Seminole, Inc., 436 So.2d 399 (Fla.App.1983); Satchell v. Van Brode, 248 So.2d 245 (Fla.App.1971). A secured party judgment creditor at a judicial sale would be entitled to apply the proceeds from a deposit made by a defaulting purchaser toward satisfaction of the secured creditor's judgment. The forfeited earnest money deposits in this case were produced and derived from the real and personal property that was the subject of contracts of sale and the bondholders' liens. We therefore conclude that the forfeited deposits constituted proceeds from the sales of the Kissimmee and Key West properties.[3]
 
 
 9
 REVERSED and REMANDED with instructions to allocate the deposit forfeited by Friendly to the Kissimmee bondholders and to allocate the deposit forfeited by Leatherwood to the Key West bondholders.
 
 
 
 *
 Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The earnest money deposits were distributed according to the following "Surcharge Formula": 64.3 percent to the Kissimmee bondholders; 21.0 percent to the Orange City bondholders; 6.3 percent to the Key West bondholders; 2.1 percent to the Englewood bondholders; and 6.3 percent to the unsecured creditors of Aldersgate
 
 
 [2]
 We conclude that the other claims of error are meritless, although we do not discuss them in this opinion
 
 
 [3]
 Decisions of other courts support our interpretation of the term proceeds. In Bank of Silvis v. Boultinghouse Auction Co., 71 Ill.App.3d 98, 27 Ill.Dec. 455, 389 N.E.2d 267 (1979), the Illinois court held that where an auctioneer's contract entitled him to three percent of the total "proceeds" from the sale of real estate, the down payment forfeited by a defaulting prospective purchaser constituted "proceeds" from which the auctioneer was entitled to take his percentage. The court referred to the following definition of proceeds: "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue: the total amount brought in * * * the net sum received * * * " Id. 71 Ill.Dec. at 457, 389 N.E.2d at 269 (quoting Webster's Third New International Dictionary Unabridged (1961)). The Court further defined proceeds as "monies actually received by the seller from the buyer." Id
 In In re Vandevender, 87 B.R. 59 (Bkrtcy.S.D.Ill.1988), the court addressed the precise issue we address today: whether forfeited earnest money is considered proceeds from the sale of the real property or unencumbered assets held by the trustee for the unsecured creditors of the bankruptcy estate. The court found persuasive the original district court opinion in this case and, also relying on Bank of Silvis, held that the forfeited funds in the trustee's possession were "proceeds" of the sale of real estate to which the secured creditors with valid liens on the real estate were entitled to attach their liens in priority order. Id. at 61. The court rejected the argument that the forfeited funds were unencumbered assets belonging to the unsecured creditors of the estate. Id.