**In re SEAPHARM, INC.**

**Bankruptcy No. 88–04678.**

United States Bankruptcy Court, D. New Jersey.

April 26, 1991.

James G. Aaron, Schottland, Vernon, Aaron & Costanzo, Shrewsbury, N.J., for Peter Costanzo.

Roger Ward, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for trustee.

Joel Camche, Hallinan & Camche, New York City, for Banco Hispano Americano.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### I. Introduction

At the hearing on this matter which took place on March 18, 1991, the court determined that the actual costs of the auction should be borne by the secured creditor, Banco Hispano Americano. Additionally, determination was reserved as to whether or not the auctioneer was entitled to a commission from the estate on the sale of shares of stock in an entity known as PharmaMar. For the reasons set forth below, the auctioneer will be allowed the sum of $7500 to be paid by the estate.

### II. Facts

The facts may be summarized briefly. Included in the property of the estate were 6,250 shares of stock in a Spanish corporation known as PharmaMar. This stock was subject to a security interest held by Banco Hispano Americano. Furthermore, the parties stipulated that there were restraints on alienation of the stock, and the attorney for the bank asserted that the stock was simply not salable and could not bring more than the bank's lien.

On July 11, 1989, after a hearing, the court directed that the trustee dispose of the stock "in a commercially reasonable manner." During a further telephone hearing held November 20, 1989, the court ruled that the bank would be permitted to bid up to the amount of its debt without any deposit or payment.

To implement the sale, the trustee retained a professional auctioneer whose appointment was approved by the court pursuant to the provisions of 11 U.S.C. § 327. Although the attorney for the bank argued that a sale would be an exercise in futility, the trustee determined that it was his fiduciary duty to find out if there was a market. The auctioneer appropriately advertised the sale and attempted to bring as many bidders to the sale as possible. The sale was eventually held on December 1, 1989. While a number of entities attended, the bank was the sole bidder and bid the amount of its lien, $525,000.00.

The auctioneer brought an application for expenses and commissions in accordance with Local Rule 7 M of the Local Rules of Bankruptcy Practice.[1] After briefs were submitted and the matter argued before the court, the court ruled that pursuant to 11 U.S.C. § 506(c), the actual expenses incurred by the auctioneer were necessary for "preserving, or disposing of, such property" resulting in a "benefit to the holder" of the claim. Accordingly, the auctioneer was awarded actual expenses which were charged to the bank.

### III. Discussion

The allowance of expenses to the auctioneer is specifically authorized under Local Rule 7 M. While an allowance for expenses is mandatory under the rule, an allowance for commissions is not. Consequently, what remains for determination is whether the auctioneer is entitled to any commissions, and, if so, in what amount. Local Rule 7 M provides for "commissions on net proceeds of sale" and reads in its entirety:

Auctioneers shall be allowed those expenses approved by the court and in addition, commissions on net proceeds of sale, *not to exceed:* 10% of the first $50,000; 7% of the next $50,000; 5% of the next $50,000; 3% of the next $100,000; and 1% on all amounts above $250,000. (Emphasis added).

The trustee argues that because the bank bid the full amount of its lien there were no net proceeds, and hence, the auctioneer is not entitled to any commission under the Local Rule.

The only authority discovered by this court which discusses the problem of proceeds in the context of a dispute over commissions is *Bank of Silvis v. Boultinghouse Auction Co.,* 71 Ill.App.3d 98, 27 Ill.Dec. 455, 389 N.E.2d 267 (3d Dist.1979). In that case, a bidder paid 10% of the purchase price then defaulted on the balance. The auctioneer sought to retain 3% of the entire bid price, the agreed-upon commission. The court held that the language of the contract upon which the commission was based, while vague, had to be interpreted to mean that the term "proceeds usually indicates something actually received." *Bank of Silvis,* 71 Ill.App.3d at 100–01, 27 Ill.Dec. at 457, 389 N.E.2d at 269. Accordingly, the court denied the auctioneer a commission based upon 3% of the bid price. *See also In re Vandevender,* 87 B.R. 59 (Bankr.S.D.Ill.1988).

In the instant case, the use of the term "net" confirms a similar interpretation. Within the context of the rule, the term "net" clearly refers to the amount received by the trustee, or in appropriate cases, the debtor-in-possession. Thus, there were no net proceeds because the trustee received nothing. As a result this court cannot award fees under Local Rule 7 M.

While the language of the rule is clear, the inquiry must be carried one step further because the result called for in the instant case would be, from the standpoint of the auctioneer, draconian. The auctioneer did everything he was told to do. He served the court and he served the trustee. To deny him commissions in their entirety now would have a chilling effect upon the important role auctioneers play in the bankruptcy process. Furthermore, the elimination of commissions in a case where a secured creditor wishes to bid in its lien

---

**1.** The amount claimed from the auctioneer was $16,750.00 but that amount did not take into account a reduction from the total price for the actual costs as required under Local Rule 7 M.

The actual price paid was $525,000.00 and the commission on proceeds as calculated by Rule 7 M would be $16,687.46.

would inhibit the trustee from appropriately "testing the waters" to seek the best possible result.

Fortunately, the drafters of the Bankruptcy Code anticipated the possibility of this type of result and provided in 11 U.S.C. § 503(b)(1)(A) for the payment of:

> [t]he actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

Thus, the court must make an inquiry into whether or not the actions of the auctioneer served to preserve the estate.

To the extent that the trustee would have been derelict in his duties had he failed to determine whether or not there was a market for the PharmaMar stock, and to the extent that the entire estate benefitted by the trustee's making the ultimate decision concerning the sale of the stock, the auctioneer's actions did serve to preserve the estate. I therefore find that the auctioneer is entitled to commissions pursuant to the provisions of 11 U.S.C. § 503(b)(1)(A).

While commissions on the net proceeds are easily calculable, a general benefit to the estate under § 503 may be awarded in the discretion of this court. Furthermore, the formula for calculation of commissions under § 503(b)(1)(A) requires the court to make a determination as to what was "necessary" rather than quantifying an absolute amount. That such a determination is to be made is clear from the Code itself and from the substantial authority which holds that decisions concerning administrative expenses are within the reasonable discretion of this court. *See In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988); *In re Baldwin–United Corp.,* 43 B.R. 443 (S.D. Ohio 1984); *In re Woodstock Assoc. I, Inc.,* 120 B.R. 436 (Bankr.N.D.Ill.1990); *In re Englewood Community Hosp. Corp.,* 117 B.R. 352 (Bankr.N.D.Ill.1990). Thus, this court will take into account the facts and circumstances of the auction in determining whether to grant a commission based upon the benefit to the estate, in addition to considering the actual services performed by the auctioneer.

Although the auctioneer has not submitted hourly time records, it must be pointed out that the subject auction was not excessively complex and did not require packaging, lotting, touring and many of the other time consuming events of a public auction of personal property. I, therefore, conclude that a reasonable fee for the benefit conferred upon the estate as a result of the actual and necessary services performed by this auctioneer is $7,500.00.

*IV. Conclusion*

For the reasons set forth above, the auctioneer is allowed the sum of $7500 to be paid by the estate. Counsel for the auctioneer shall submit an order within ten (10) days.