In re CLANCY & COMPANY CONSTRUCTION, INC.,
EIN: 84–0884541, Debtor.

**Bankruptcy No. 94–22794–SBB.**

United States Bankruptcy Court,
D. Colorado.

Aug. 11, 1997.

Jon Nicholls, Bruce Wyatt, Nicholls & Associates, P.C., Denver, CO, for John Fitzgibbons, Trustee.

Kimberly Tyson, Sherman & Howard, L.L.C., Denver, CO, for Northern Colorado Video, Inc.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the following documents:

a. Trustee's Objection to Claim # 50 (Claim of Northern Colorado Video, Inc.) filed December 30, 1996;

b. Creditor Northern Colorado Video Inc.'s Response to Trustee's Objection to Claim # 50 and Request for Hearing filed February 18, 1997;

c. Agreed Statement of Facts for Hearing on Trustee's Objection to Claim # 50 filed April 30, 1997;

d. Trustee's Opening Brief filed May 23, 1997;

e. Creditor Northern Colorado Video, Inc.'s Brief in Support of Response to Trustee's Objection to Claim # 50 filed June 13, 1997; and

f. Trustee's Reply Brief filed June 20, 1997.

The Court, having reviewed the file, conducted a brief hearing on the issues on July 8, 1997, at which time the matter was taken under advisement. The Court, being advised in the premises, makes the following findings of fact and conclusions of law and enters the following order.

## FACTUAL BACKGROUND [1]

1. On February 2, 1994, the Debtor executed a $125,000 note and deed of trust [2] in favor of Schuck Interests, Inc., d/b/a Schuck Communities, Inc. ("Schuck") for the purchase of a residential lot upon which the Debtor planned to construct a opulent show home, to be featured in a local "Parade of Homes." Simultaneously therewith, Schuck executed an agreement whereby its ground loan would be subordinated to a construction loan to be acquired from Western National Bank ("WNB"). The Schuck deed of trust was recorded on February 7, 1994.

2. The Debtor filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on December 30, 1994. The filing was at least partially prompted by a pending foreclosure of the first deed of trust by WNB.

3. Schuck filed a timely proof of claim on January 17, 1995 which received the numeric designation for identification purposes of "1", claimed to be secured in the amount of $138,-684.93.

4. On March 14, 1995 WNB filed a motion for relief from stay seeking to continue with its foreclosure proceedings. While that motion was pending, the Debtor entered into a contract to sell the property to God's Garden Group, LP ("GGG"). GGG deposited $50,000 in escrow with the real estate broker, Prudential Patterson Group Realtors, as an earnest money deposit.

5. Schuck transferred its claim to Northern Colorado Video, Inc. ("NCVI") on May 15, 1995 and a statement of transfer of claim was filed in the within case on May 25, 1995. Based upon the pending sale contract, NCVI filed a response to the motion for relief from stay on May 19, 1995 and this Court denied the motion for relief from stay on May 24, 1995.

6. The contemplated sale to GGG fell through and on July 13, 1995 GGG consensually forfeited the earnest money deposit. A check for $26,000 was drawn on the escrow account and sent to Debtor's counsel on August 9, 1995. That check was never deposited in the Debtor's DIP account. The remainder of the escrowed funds continued to be held by the escrow agent until February 8, 1996.

7. On August 10, 1995, WNB flied a second motion for relief from stay.

8. NCVI filed a Notice Under Section 546(b) in Lieu of Seizure of Property or Commencement of Action on September 7, 1995.

9. This Court granted WNB's second motion for relief from stay on September 8, 1995.

10. The Debtor filed a motion to convert the case to Chapter 7 on September 25, 1995. This Court entered an order converting the case on October 2, 1995.

---

**1.** Most of the facts herein described were the subject of agreement between the parties filed April 30, 1997.

**2.** The deed of trust contains the following language: "and also all of the rents, issues, uses, profits and income of the [real property]."

11. At the October 11, 1995 foreclosure sale, WNB bid the full amount of its debt. NCVI received notice of the sale, however, NCVI did not exercise its right to redeem.

12. On November 7, 1995, the $26,000 check drawn on the escrow account was forwarded to the Trustee and deposited into the estate's account.

13. NCVI filed an amended proof of claim on February 2, 1996 which received the numeric designation for identification purposes of "50". The proof of claim stated a secured claim in the amount of $138,684.93, representing $125,000 in principal and $13,684.93 in accrued interest as of the Petition Date, and an unsecured non-priority claim in like amount.

14. NCVI contends that its lien extends to the $50,000 earnest money forfeited by GGG. NCVI maintains that its lien immediately attached to the $50,000 "proceeds" upon the filing of the Section 546(b) notice and that the lien was not, thereafter, affected by WNB's foreclosure against the real property.

15. The Trustee disagrees, contending that the claim should be limited to a $125,000 unsecured non-priority claim because the creditor's lien was extinguished upon the issuance of the public trustee's deed to WNB.

### ISSUES PRESENTED

This Court is confronted with a number of interrelated issues in analyzing the subject proof of claim. First, this Court must examine the effect, if any, of NCVI's failure to redeem the real property following the foreclosure by WNB upon its claim to the escrowed funds. For the reasons set forth herein, this Court concludes that NCVI's failure to redeem the real property from foreclosure has no practical effect upon its rights to the escrowed funds.

Secondly, this Court must decide whether the escrowed funds constitute "proceeds" of the real property, thereby creating collateral to which NCVI's lien could attach. For the reasons set forth herein, and more fully articulated in the published opinions of *Old Stone Bank v. Tycon I Building Limited Partnership*, 946 F.2d 271 (4th Cir.1991), *In re Aldersgate Foundation, Inc.*, 878 F.2d 1326 (11th Cir.1989), and *In re Vandevender*, 87 B.R. 59 (Bankr.S.D.Ill.1988), this Court concludes that the escrowed funds constitute proceeds, despite the fact that the sale contract which generated the funds was never consummated.

Finally, this Court must determine whether application of Article 9 of Colorado's version of the Uniform Commercial Code precludes NCVI's claim to the escrowed funds, due to NCVI's alleged failure to perfect its rights to the funds. For the reasons set forth herein, this Court concludes that the referenced provisions of the Colorado Uniform Commercial Code do not apply in these circumstances.

### DISCUSSION

■ Under Colorado law, the right to redeem from a foreclosure sale is "to be exercised in strict compliance with statutory terms" and "depends entirely upon the provisions of the statute creating the right." *Johnson v. Smith*, 675 P.2d 307, 310 (Colo. 1984) (*en banc*). Under the statute, a lienor has an opportunity to redeem only after the time of redemption by the owner of the foreclosed property, or by any person who might be liable upon a deficiency, has expired. C.R.S. § 38–39–103. The lienor's right to redeem can be cut off only if the property is redeemed by the owner or other qualified person (C.R.S. § 38–39–102) or if the lienor fails to give the required notice of intention to redeem.

■ As the Tenth Circuit observed over six decades ago, "[t]he right to redeem is purely statutory and is not to be enlarged by judicial interpretation, yet a liberal construction is to be given the statute allowing redemption, to the end that all the property of a debtor may pay as many debts as possible." *Walker v. Wallace*, 79 Colo. 380, 382, 246 P. 553, 553 (1926). *See, generally, Sant v. Stephens*, 848 F.2d 1119, 1124 (10th Cir.1988); *Arnove v. First Federal Savings & Loan Association of Tarpon Springs, Florida*, 713 P.2d 1329, 1330 (Colo.App.1985), *cert. den'd*, Feb. 10, 1986.

■ Immediately following a foreclosure sale, the owner retains title to the property,

right to possession of the premises, and the statutory right to redeem. The holder of the certificate of purchase has a lien on the property, with the right to receive the redemption money, or, if no redemption is made, the right upon demand, to receive a deed to the property. Once the redemption period expires, and the holder of the certificate of purchase obtains a deed to the property, the owner's property rights are extinguished. *In re Christian,* 48 B.R. 833, 835 (D.Colo.1985) (cases cited).

■ When the owner's right to redeem expires, all of his right, title and interest in and to the affected real property is extinguished. This same rule applies to the interests of junior lien holders [3] who have a right to redeem. *Baber v. Baber,* 28 Colo.App. 530, 474 P.2d 630, 632 (1970). *Accord, Theo. H. Davies & Co., Ltd. v. Long & Melone Escrow, Ltd.,* 876 F.Supp. 230, 234 (D.Hawai'i 1995); *In re Antell,* 155 B.R. 921, 932 (Bankr.E.D.Pa.1992). *Compare, e.g., Heritage Federal Credit Union v. Giampa,* 251 Ill.App.3d 237, 239, 190 Ill.Dec. 638, 639–640, 622 N.E.2d 48, 49–50 (1993)(senior liens are not affected by the foreclosure of a junior lienor).

■ It is undisputed that NCVI failed to redeem the real property following WNB's foreclosure and that WNB was properly issued a deed to the property. NCVI's rights, title and interest in and to the real property have been extinguished. This does not end the inquiry, however. NCVI maintains that it held a valid lien upon the forfeited earnest money deposit which was superior to all other claims of interest.[4]

■ Pursuant to state law, even though their liens are, generally, extinguished in the foreclosure process, junior lien holders are entitled to distribution of excess proceeds in accordance with their lien's priority after satisfaction of all prior encumbrances.[5]

> Upon the expiration of all redemption periods ... and if notice of intent to redeem has been duly filed and no redemption is made ... the excess moneys shall be paid to the junior lienors in the order of their priority and then to the owner of record as of the day of the foreclosure sale....

16 C.R.S. § 38–37–113(7).

■ Another undisputed fact appears to be that WNB's lien was fully satisfied by its credit bid at the foreclosure sale upon the real property. In this Court's opinion, the forfeited earnest money could, and actually does, constitute excess proceeds of the sale of the real property, entitling NCVI to payment on account of its former, junior lien position.

The parties appear to concede that the forfeited earnest money funds constitute "proceeds" of the real property. This Court concurs. *Accord, Old Stone Bank v. Tycon I Building Limited Partnership,* 946 F.2d 271 (4th Cir.1991); *In re Aldersgate Foundation, Inc.,* 878 F.2d 1326 (11th Cir.1989); *In re Vandevender,* 87 B.R. 59 (Bankr.S.D.Ill. 1988).

Proceeds are generally defined as "[i]ssues; income; yield; receipts; produce; money or articles or other thing of value arising or obtained by the sale of property; the sum, amount, or value of property sold or converted into money or into other property." BLACK'S LAW DICTIONARY 1084 (5th ed.1979).

The starting point for determining whether the deposit is appropriately characterized as proceeds is the definition of proceeds contained in the Colorado codification of the Uniform Commercial Code. While the Uniform Commercial Code does not of course

---

**3.** Right to redemption found in tenant with unrecorded commercial lease when creditor foreclosed on landlord's property. *Eagle Admixtures, Ltd. v. Hannon,* 867 P.2d 111, 114 (Colo.App. 1993).

**4.** The Trustee argues that the creditor, NCVI, disingenuously divorces—completely separates and isolates—the earnest money deposit from the real property collateral, then rejoins the collateral, when it ostensibly benefits the creditor. This Court does not agree. NCVI's argument is not disingenuous. It is simply trying to accurately characterize an item of collateral unique in its nature and seldom encountered.

**5.** Clearly, however, neither the former owner nor a former lien holder has a right to any profits garnered by the subsequent resale of foreclosed property by the successful purchaser. *Romstrom v. Amter,* 709 P.2d 3, 4 (Colo.App.1985), *cert. den'd,* Nov. 4, 1985.

govern the outcome of this dispute involving real property, both sides appear to agree that it provides persuasive authority with respect to the character of the earnest money deposit. Section 4–9–306(1), C.R.S. provides that " 'Proceeds' includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." The question then is whether the earnest money deposit was received upon the disposition of the real property.

This Court concurs with the *Vandevender* court that "[b]ut for the sale of the encumbered property, the earnest money deposits would never have been forfeited to the trustee," therefore, the forfeited deposit was derived from a sale of the land and constituted "proceeds" subject to secured creditors' liens. *Vandevender, supra* at 61.

As the court in *Aldersgate* observed,

" 'Proceeds' includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." In this case, the deposits were made because of a sale contract When the would-be purchasers deposited the earnest money on the properties they were, in essence, obtaining the right to purchase the land. No one else could buy it; and the trustee could not sell it to anyone else. A valuable right to the property was conveyed. Selling that right to purchase the property at a given price was a disposition of the collateral, and the forfeited deposits thus fall within the statutory definition of proceeds. *Aldersgate, supra* at 1328 (quoting portions of the Florida Uniform Commercial Code).

This Court is not persuaded that NCVI has any less right to the deposit simply because the sale to GGG was not consummated. There is nothing in the language of C.R.S. § 4–9–306(1) which requires that the disposition of collateral must be final in order to generate proceeds. Moreover, the earnest money deposit was received in exchange for good and valuable consideration, namely (a) the fight to purchase the real property—no one else could buy it; and the Trustee could

not sell it to anyone else; (b) temporary equitable title to the real property, including the power to sell these rights to another during the pendency of the GGG contract; and (c) compensation to the seller for a decrease in the value of the real property that may occur while it is under contract. In summary, the earnest money deposit was paid by GGG in exchange for rights in the property and flowed from a disposition of the real property. The deposit, therefore, represents proceeds of the real property subject to NCVI's lien. *Accord, Vandevender, supra* at 61 ("Having determined that the forfeited earnest deposits were 'proceeds' of the sales, the [*Aldersgate* ] district court then held that unsecured creditors would not be permitted to profit from the sale of mortgaged property at the expense of the secured creditors holding liens on that property."); *Aldersgate, supra; Old Stone, supra.*

■ Moreover, Colorado statute authorizes the foreclosure sale of less than all of the property encumbered by a deed of trust if the parcel upon which foreclosure is sought is separately described in that deed of trust or in an amendment to it. C.R.S. § 38–38–101(12). *Sant, supra* at 1127. Where a creditor acknowledges that the sale of less than all of the encumbered property fully satisfied the debt owed, the debtor is entitled to a release of the remaining encumbrance. *Rolfes v. O'Connor,* 844 P.2d 1330, 1334 (Colo.App.1992). Under this analysis, had WNB held any interest in the forfeited earnest money, it would have been subject to release upon WNB's full satisfaction because of the real property foreclosure sale process and its credit bid.[6] NCVI would then be the first lien holder on these proceeds.

■ Having made the determination that the forfeited earnest money funds constitute "proceeds" of the real property does not necessitate the conclusion that security interests in these proceeds are governed by Article 9 of the Uniform Commercial Code. It is evident from the introductory language of Section 4–9–104(j), C.R.S., that Article 9 pro-

---

**6.** Notably, WNB does not appear to advance any claim to the funds and is, therefore, presumed

placated.

visions do not apply "to the creation or transfer of an interest in or lien on real estate. . . ."

The Trustee's argument regarding the application of Section 4–9–102(3), C.R.S., does not affect this Court's conclusion that Article 9 does not apply. Section 4–9–102(3), C.R.S., provides, in part, that "the application of this article **to a security interest in a secured obligation** is not affected by the fact the obligation is itself secured by a transaction or interest to which this article does not apply." (emphasis added). The cases cited by the Trustee on this issue are factually distinguishable from the instant case. *See, Jackson County Federal Savings and Loan Association v. Maduff Mortgage Corporation,* 608 F.Supp. 588 (D.Colo.1985) (finding Article 9 applicable to the perfection of an interest in a note and deed of trust). *See, also, Citicorp Person–to–Person Financial Center, Inc. v. Fremont National Bank,* 738 P.2d 29, 31–32 (Colo.App.1987) (right to proceeds from an installment land sale contract is governed by Article 9). Here, NCVI's interest in the proceeds of the real property does not fall within the parameters of a "security interest in a secured obligation."

Simply put, NCVI's collateral has merely changed, or, more precisely perhaps, has been augmented to include the earnest money deposit. The Estate received proceeds from a failed attempt to sell the real property, not from any sale of any lesser interest therein. *See, In re Kids Creek Partners, L.P.,* 210 B.R. 547, 555 (Bankr.N.D.Ill.1997) ("Since [a creditor] did not hold a security interest in the real property pursuant to the U.C.C. papers, it could not have a security interest in the cash proceeds from the real estate sale."). *See, also, In re Seaway Exp. Corp.,* 105 B.R. 28 (9th Cir. BAP 1989), *aff'd,* 912 F.2d 1125 (9th Cir.1990) (finding U.C.C. perfection irrelevant where proceeds of accounts receivable were converted into real property).

The distinction is further explained by the Official Comments.

> The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Article is applicable to the security interest thus created in the note and the mortgage.

Official Comment 4.

■ Having disposed of the Trustee's arguments relating to the applicability of Article 9 of the Uniform Commercial, Code, NCVI's filing of a Section 546(b) notice served to perfect NCVI's interest in the escrowed funds and convert the funds into cash collateral. *See, generally, In re Consolidated Capital Income Trust v. Colter,* 47 B.R. 1008 (D.Colo.1985).

This Court, therefore, need not reach the Trustee's arguments regarding whether a hypothetical U.C.C. perfection pursuant to Sections 4–9–304 and 306, C.R.S., would be timely. Neither must this Court explore the possible impact that the Supreme Court's opinion in *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) would have on the facts of the within case.

## CONCLUSION

For the above-stated reasons, it is

ORDERED that the Trustee's Objection to Claim # 50 (Claim of Northern Colorado Video, Inc.) filed December 30, 1996 is OVERRULED.

## ORDER ON TRUSTEE'S MOTION FOR RECONSIDERATION

THIS MATTER comes before the Court on the Trustee's Motion for Reconsideration of Order Allowing Claim filed August 21, 1997 and the Response thereto filed by creditor Northern Colorado Video, Inc. on August 22, 1997. The Court, having reviewed the file and being advised in the premises,

■ DOES FIND that the Trustee in his Motion correctly points out that a statute referenced in this Court's August 11, 1997 Memorandum Opinion and Order is no longer valid, inasmuch as it has been repealed. However, this Court finds that neither the statute as cited by this Court nor the analogous statute since enacted are either compel-

ling or even applicable to the factual situation before this Court. This Court, by referencing the statute, was not implicitly or explicitly characterizing the forfeited earnest money funds as excess proceeds *from a foreclosure sale.* Rather, the statute was cited as illustrative only and was certainly not of critical importance to the conclusion reached by this Court. This Court ultimately determined that the forfeited earnest money funds were *proceeds of the property*—generated from an unsuccessful attempt to sell the property prior to the foreclosure, *not* proceeds generated from the foreclosure itself. While this Court's mistaken citation to a repealed statute was regrettable, it was not determinative of this Court's conclusion on the issue and, therefore, is an insufficient basis for this Court to reconsider its August 11, 1997 Memorandum Opinion and Order. Accordingly, it is

ORDERED that the Trustee's Motion for Reconsideration of Order Allowing Claim filed August 21, 1997 is DENIED.